# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1468 |
| COMPLETE TITLE: | In the matter of the mental commitment of S.L.L.: |
| | Waukesha County, |
| | Petitioner-Respondent, |
| | v. |
| | S.L.L., |
| | Respondent-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 832, 917 N.W.2d 234
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 12, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 11, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | William Domina |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. and DALLET, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant-petitioner, there were briefs filed by *Colleen D. Ball*, assistant state public defender. There was an oral argument by *Colleen D. Ball*.

For the petitioner-respondent, there was a brief filed by *Robert J. Mueller*, corporation counsel. There was an oral argument by *Robert J. Mueller.*

No. 2017AP1468
(L.C. No. 2016ME478)

STATE OF WISCONSIN      :     IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**In the matter of the mental commitment of S.L.L.:**


**Waukesha County,**

     **Petitioner-Respondent,**

  **v.**

**S.L.L.,**

     **Respondent-Appellant-Petitioner.**

**FILED**

**JUN 12, 2019**

Sheila T. Reiff
Clerk of Supreme Court


REVIEW of a decision of the Court of Appeals. *Affirmed.*


¶1 DANIEL KELLY, J. Ms. L. challenges an order extending her commitment to the care and custody of Waukesha County pursuant to Chapter 51 of our Wisconsin statutes. She raises three issues for our review. First, she says the circuit court lacked jurisdiction over her when it entered an order extending her commitment. Second, she says the circuit court had no statutory authority to enter a default judgment against her for failing to appear at a scheduled hearing. And third, she asserts there was insufficient evidence of record to support

the circuit court's order extending her commitment. All three issues are moot, but we choose to address the first two. For the reasons below, we affirm the court of appeals.

## I. BACKGROUND

¶2 On August 10, 2016, the Waukesha County Sheriff's Department detained Ms. L. on an emergency basis pursuant to Wis. Stat. § 51.15(1) (2017-18).[1] That statute allows emergency detention when an individual: (1) is mentally ill, drug dependent, or developmentally disabled; (2) demonstrates one or more of the behaviors listed in the statute; and (3) gives reason to believe the individual is unable or unwilling to cooperate with voluntary treatment.[2]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[2] Wisconsin Stat. § 51.15(1) provides, in relevant part:

(ag) The purpose of this section is to provide, on an emergency basis, treatment by the least restrictive means appropriate to the individual's needs, to individuals who meet all of the following criteria:

1. Are mentally ill, drug dependent, or developmentally disabled.

2. Evidence one of the standards set forth in par. (ar) 1. to 4.

3. Are reasonably believed to be unable or unwilling to cooperate with voluntary treatment.

(continued)

¶3 An emergency detention under Wis. Stat. § 51.15 is initiated by completing the form entitled "Statement of Emergency Detention by Law Enforcement Officer" (the "Statement"). The completed Statement must detail the subject's condition and the reasons that make detention necessary. In this case, the Statement says Ms. L. suffered from anxiety and depression (for which she was taking no medication), was homeless and without money or food, exhibited very poor hygiene, and experienced at least six encounters with law enforcement over the preceding 48 hours for "disorderly issues," which included having taken "a swing at a courthouse employee." The Deputy who completed the Statement concluded that Ms. L. was "mentally ill, drug dependent, or developmentally disabled," "evidence[d] behavior which constitutes a substantial

---

(ar) A law enforcement officer . . . may take an individual into custody if the officer or person has cause to believe that the individual is mentally ill, is drug dependent, or is developmentally disabled, that taking the person into custody is the least restrictive alternative appropriate to the person's needs, and that the individual evidences any of the following:

. . . .

4. Behavior manifested by a recent act or omission that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter, or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

3

probability of physical harm to self or to others," and that taking Ms. L. into custody was "the least restrictive alternative appropriate" to her needs. The Deputy also noted that Ms. L. was dangerous, appeared to talk to others when no one else was present, and "had no rational explanation for her basic needs[.]" Ms. L. was taken into custody, transported to Waukesha Memorial Hospital for medical clearance, and then brought to the Waukesha County Mental Health Center ("MHC").

¶4 The Sheriff's Department filed the Statement with the Waukesha County Circuit Court on August 11, 2016. This "has the same effect as a petition for commitment under s. 51.20," and requires a probable-cause hearing pursuant to Wis. Stat. § 51.20(7) within 72 hours. Wis. Stat. § 51.15(5). The hearing occurred the next day, and the circuit court commissioner found probable cause to believe Ms. L. was "dangerous to self or others." The circuit court scheduled a final hearing for August 30, 2016.

¶5 Ms. L. appeared and testified at the final hearing as scheduled. The circuit court found her mentally ill and ordered her committed to the care and custody of Waukesha County for six months with inpatient placement at the MHC (the "Initial Commitment").[3] The circuit court also found she was not competent to refuse psychotropic medication or treatment, and so authorized the involuntary administration of medication during the period of commitment. Ms. L. responded well to the

---

[3] The Honorable William J. Domina presided.

4

treatment, so the County executed a Conditional Transfer allowing her to leave the MHC and reside elsewhere (the "Transfer"). Ms. L. signed the Transfer, thereby evidencing her agreement that she would abide by the Transfer's requirements, which included taking all prescribed medications, complying with all ongoing treatment and activities recommended by the Waukesha County Health and Human Services Department, and notifying the County if she changed her address from the one listed in the Transfer. The Transfer also stated that if she failed to comply with its conditions she would "be returned to an inpatient facility for further disposition and treatment." Ms. L. left the MHC on September 8, 2016. She attended an appointment to receive medication on November 2, 2016, but thereafter absconded from treatment.[4] She also failed to keep the County updated on her current address.

¶6 Prior to expiration of Ms. L.'s Initial Commitment, the County applied to the circuit court for a 12-month extension of her commitment (the "Extension Petition"). It alleged that Ms. L. had fallen out of compliance with the Transfer's conditions by missing scheduled treatments and failing to keep a

---

[4] The dissent says our use of the word "abscond" is misleading because Black's Law Dictionary defines that term to mean "[t]o depart secretly or suddenly, esp. to avoid arrest, prosecution, or service of process." Dissent, ¶50 n.3. She departed from her treatment program "secretly" by failing to periodically return for therapy, and by moving from her declared address without letting the County know. That is to say, according to Black's Law Dictionary, she absconded from treatment.

current address on file.[5] The circuit court scheduled a hearing on the Extension Petition for February 28, 2017 (the "Extension Hearing"). It also ordered a pre-hearing examination of Ms. L.'s mental condition.[6] Notice of the Extension Hearing was sent to Ms. L.'s last known address and to her appointed counsel. The notice included the time and place of the hearing, identity of the witnesses who would appear, the topics of their anticipated testimony, and the Extension Petition. The copy of the notice sent to Ms. L. was returned as undeliverable.

¶7 The Extension Hearing commenced as scheduled, with Ms. L. in absentia but represented by appointed counsel.[7] Because of Ms. L.'s absence, the County asked the circuit court to issue a writ of capias and to reschedule the hearing for a week following her return to the MHC. It also asked the circuit court to toll the expiration of the Initial Commitment pending

---

[5] The County notes that her last listed address (as of October 3, 2016) was the Cathedral Center in Milwaukee. But upon contacting the Cathedral Center, the County discovered that the center banned her from staying there "due to her behavior."

[6] Ms. L. failed to either schedule or appear for these examinations. However, both physicians, without examining her, opined that she was mentally ill, that she was dangerous, and that she was a proper subject for treatment. They both relied on the recommitment report prepared by Ms. L.'s caseworker a few weeks before the Extension Hearing. The physician reports were similar in most respects except that one physician recommended out-patient treatment and the other recommended locked inpatient treatment.

[7] Her counsel said he had not communicated with Ms. L. prior to the hearing and did not know her whereabouts. The County did not know where she was either.

6

the rescheduled hearing date. The circuit court, however, turned its attention to whether it had jurisdiction over Ms. L. Her attorney affirmed she was "subject to the jurisdiction of the Court through the pendency of the order." The circuit court then concluded that Ms. L. had "submitted to the jurisdiction of the Court," and that "[s]he has not appeared here today" so "[s]he's in default of her right to object." Relying on the physician reports and the County's extension petition, the circuit court found that Ms. L. was still mentally ill, a resident of Waukesha County, and a proper subject for inpatient treatment and commitment. So it entered an order extending her commitment for twelve months, and a separate order authorizing the County to involuntarily medicate her during the pendency of the commitment (we will refer to the two orders collectively as the "Extension Order"). The circuit court also issued a writ of capias.

¶8 Ms. L. appealed. During the pendency of the appeal, the County moved the circuit court to dismiss the matter because the Extension Order would accomplish nothing unless Ms. L. could be located and returned to treatment. The circuit court granted the motion and cancelled both the writ of capias and the Extension Order. The County then moved to dismiss the appeal as moot. The court of appeals initially denied the County's request, but subsequently issued a one-judge opinion granting the motion.

¶9 Ms. L.'s petition for review (which we granted) presents the following three substantive issues. First, whether

7

the circuit court had personal jurisdiction over her for the purpose of issuing the Extension Order.[8] Second, whether she is subject to a default ruling for failing to appear at the Extension Hearing. And third, whether a Chapter 51 extension order based on reports of physicians who never examined her nor testified at the Extension Hearing is defective for lack of sufficient evidence or because it violates the respondent's due process rights. Ms. L. recognizes that her case's procedural posture potentially implicates our mootness doctrine, but argues her issues are either not moot or are of the type we address even when they are.

## II. STANDARD OF REVIEW

¶10 We review the circuit court's jurisdiction over Ms. L. de novo. Segregated Account of Ambac Assurance Corp. v. Countrywide Home Loans, Inc., 2017 WI 71, ¶7, 376 Wis. 2d 528, 898 N.W.2d 70 ("Whether Wisconsin courts have personal jurisdiction . . . is a question of law we review de novo, although we benefit from the analyses of the circuit court and court of appeals."); State v. Aufderhaar, 2005 WI 108, ¶10, 283 Wis. 2d 336, 700 N.W.2d 4 ("Due process determinations are questions of law we decide de novo."). Whether Chapter 51 allows for entry of default against a respondent for failing to appear at a final recommitment hearing is also a question of law we review de novo. State v. Alger, 2015 WI 3, ¶21, 360

---

[8] Chapter 51 indifferently uses "recommitment" and "extension of a commitment," so we will as well. Portage Cty. v. J.W.K., 2019 WI 54, ¶1 n.1, __ Wis. 2d __, __ N.W.2d __.

Wis. 2d 193, 858 N.W.2d 346 ("The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court."). We review a circuit court's decision on whether default judgment is warranted for an erroneous exercise of discretion because "the decision to grant a motion for default judgment is within the sound discretion of the circuit court." Shirk v. Bowling, Inc., 2001 WI 36, ¶15, 242 Wis. 2d 153, 624 N.W.2d 375. We review the threshold issue (mootness) de novo: "Mootness is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals." PRN Assocs. LLC v. DOA, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559.

### III. DISCUSSION

#### A. Personal Jurisdiction

¶11 Ms. L. says the circuit court did not have jurisdiction over her when it entered the Extension Order. Her challenge is two-fold. First, she argues that the County was obliged to personally serve her with notice of the Extension Hearing. Second, she asserts that the Extension Petition and accompanying documents were deficient. An extension petition, she says, must satisfy the conditions of Wis. Stat. § 51.20(1), which requires the petition to allege she is mentally ill, a proper subject for treatment, and dangerous. She says the petition must also contain a clear and concise statement of facts in support of those allegations. If the County fails with

9

respect to either prong of her challenge, she argues, the circuit court can exercise no jurisdiction over her.

¶12 Ms. L. is correct that a court does not have jurisdiction over a party unless the circumstances of the case satisfy both statutory and constitutional requirements. We have noted before that complying with the "statutory provisions regarding service of process is required before a [] court has personal jurisdiction." Aufderhaar, 283 Wis. 2d 336, ¶27. Naturally, the assertion of personal jurisdiction must also comport with the due process clause of the Fourteenth Amendment. Bristol-Myers Squibb Co. v. Superior Court of California, 137 S. Ct. 1773, 1779 (2017) ("It has long been established that the Fourteenth Amendment limits the personal jurisdiction of state courts.").

¶13 So if Ms. L. is right about having not received proper notice, the Extension Order was void from the beginning. "Personal jurisdiction" embodies the court's power over a party, without which it can enter no valid judgment. State v. Smith, 2005 WI 104, ¶18, 283 Wis. 2d 57, 699 N.W.2d 508 ("Personal jurisdiction . . . refers to a court's power 'to enter a judgment in personam against an individual party.'") (quoted source omitted); West v. West, 82 Wis. 2d 158, 167–68, 262 N.W.2d 87 (1978) ("Because personal jurisdiction was not acquired over the defendant . . . the trial judge correctly concluded that the judgment . . . was void."); see also 21 C.J.S. Courts § 44 ("Jurisdiction of the person is the power of a court to bring before it the person to be affected by the

10

judgment and to render a judgment binding on that person."). Before reaching the merits of the jurisdictional issue, however, we must first decide whether it is prudent to do so.

### 1. Mootness

¶14 When a court purports to exercise authority with respect to a party over whom it has no jurisdiction, the remedy is normally vacatur of the offending order. As a practical matter, however, that has already occurred in this case. The Extension Order was valid for only one year, so by its own terms it could have no authority beyond the end of February 2018. And the circuit court dismissed the entirety of this matter and canceled the writ of capias, so there are no further orders that could even potentially issue from this case. Regardless of how we resolve the jurisdictional question, therefore, our answer will not affect Ms. L.'s rights. "Ordinarily, this court, like courts in general, will not consider a question the answer to which cannot have any practical effect upon an existing controversy." State v. Leitner, 2002 WI 77, ¶13, 253 Wis. 2d 449, 646 N.W.2d 341 (footnote omitted). Such questions are moot, and we generally do not review them. Id.

¶15 But sometimes issues come to us that present, because of their characteristics or procedural posture, a need for an answer that outweighs our concern for judicial economy. We might decide a moot question, for example, if it is "capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within the time that would have a practical effect

11

upon the parties." Id., ¶14 (footnote omitted). We also might decide such a question if it is one "of great public importance." Id.

¶16 Both of these considerations bear on Ms. L.'s jurisdictional challenge. In the normal course of appellate proceedings, Chapter 51 commitment orders will expire before we have a chance to review them because their maximum statutory duration is only one year. Wis. Stat. § 51.20(13)(g)1. ("[A]ll subsequent consecutive orders of commitment of the individual may be for a period not to exceed one year."). And because commitment orders affect a profound liberty interest, it is a matter of great public importance that issuing courts properly evaluate their jurisdiction over respondents. Addington v. Texas, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."). These two considerations convince us that we must address the merits of Ms. L.'s jurisdictional issue, even though it is moot.

2. Persistency of Personal Jurisdiction

¶17 The success of Ms. L.'s argument depends, in large part, on her position that the Extension Petition represents the initiation of a new proceeding that cannot commence without all of the statutory and constitutional requirements attendant upon the commencement of an initial commitment proceeding. That is to say, Ms. L. assumes the circuit court lost jurisdiction over her sometime before the Extension Hearing, and that service of a

12

new petition (containing all of the material required by Wis. Stat. § 51.20(1)) was necessary before it could regain that jurisdiction. Neither the relevant statutory provisions nor our cases support that proposition.

¶18 Our analysis begins with Wis. Stat. § 51.20(13)(g)3., which contains the statutory basis for extending an individual's commitment.[9] In relevant part, it says:

> Upon application for extension of a commitment by the department or the county department having custody of the subject, the court shall proceed under subs. (10) to (13). If the court determines that the individual is a proper subject for commitment as prescribed in sub. (1)(a)1. and evidences the conditions under sub. (1)(a)2. or (am) or is a proper subject for commitment as prescribed in sub. (1)(ar), it shall order judgment to that effect and continue the commitment. The burden of proof is upon the county department or other person seeking commitment to establish evidence that the subject individual is in need of continued commitment.

§ 51.20(13)(g)3.

¶19 This paragraph provides textual indications that extension of a commitment does not comprise a new and separate proceeding. The first indication lies in the fact that the County files an "application for extension of a commitment." This necessarily establishes that there is a pre-existing commitment because one cannot extend what does not already

---

[9] See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'") (quoted source omitted).

exist. It also demonstrates the essential connection between the commitment and the extension proceeding inasmuch as a successful application will affect——"extend"——the original commitment. Second, the circuit court may only extend the commitment of an individual already in the County's custody. Wis. Stat. § 51.20(13)(g)3. ("Upon application for extension of a commitment by the department or the county department having custody of the subject . . . .") (emphasis added). The "custody" to which this refers, of course, is "care and commitment" pursuant to an existing order. Third, the County bears the burden of proving the need for "continued" commitment. Id. ("The burden of proof is upon the county department or other person seeking commitment to establish evidence that the subject individual is in need of continued commitment."). And finally, if the County's request is successful, then the circuit court orders the subject's commitment to continue, not commence: "If the court determines that the individual is a proper subject for commitment . . . it shall order judgment to that effect and continue the commitment." Id. Nothing in this paragraph so much as hints that a commitment extension is a proceeding that is either new, or separate from, the initial commitment. To the contrary, the statute's language demonstrates a logical and textual continuity that cannot be interrupted without loss of meaning.

¶20 The continuity of original and extended commitment proceedings is not a new subject for us. We addressed this issue in the context of a request for substitution of judge in

14

State ex rel. Serocki v. Circuit Court For Clark County, 163 Wis. 2d 152, 471 N.W.2d 49 (1991). There, we concentrated on the purpose of the extension proceeding, which was to evaluate the continuing needs of the committed individual. Id. at 159-60 (quoting M.J. v. Milwaukee Cty. Combined Cmty. Serv. Bd., 122 Wis. 2d 525, 530-31, 362 N.W.2d 190 (Ct. App. 1984)). We reasoned that "[t]his description of the purpose of the recommitment hearing and the evidence to be presented support the respondent's argument that at the recommitment hearing the circuit court continues to receive evidence in the same case." Serocki, 163 Wis. 2d at 160 (emphasis added). We concluded, therefore, "that the legislature intended an individual's recommitment hearing to be, in the context of a request for substitution, a continuation of the original commitment proceeding and previous recommitment hearings." Id.[10]

¶21 Although Serocki's specific holding was limited to the context of a substitution of judge request, its logic inescapably applies here as well. In fact, Serocki and Ms. L.'s argument are entirely incompatible. Ms. L. says the extension petition institutes a new proceeding, separate and apart from

---

[10] We said the same thing inversely, too. If the person is not already subject to a commitment order, then a proceeding that results in commitment is an original proceeding: "The petitioner apparently was not under any commitment order or in custody from September 9, 1988, until September 18, 1989. Thus the September 1989 commitment proceeding is an original commitment proceeding." State ex rel. Serocki v. Circuit Court For Clark Cty., 163 Wis. 2d 152, 155 n.2, 471 N.W.2d 49 (1991).

15

the initial commitment. But <u>Serocki</u> says the extension hearing is part of the same case from whence the initial commitment arose: "[A]t the recommitment hearing the circuit court continues to receive evidence <u>in the same case</u>." <u>Id.</u> (emphasis added). During the pendency of a case, personal jurisdiction is not perishable; there is no need to periodically refresh it. The court either does, or it does not, have jurisdiction over the person. If it does, it persists to the end of the case. Ms. L. has presented no authority, or argument, to the contrary. We conclude that, for purposes of personal jurisdiction, an extension hearing is "a continuation of the original commitment proceeding and previous recommitment hearings." <u>Id.</u> Therefore, the circuit court still had jurisdiction over Ms. L. when it conducted the Extension Hearing and entered the Extension Order.[11]

### 3. Required Notice Content

¶22 With that backdrop, we now consider the nature of notice the County must provide to Ms. L. before conducting the

---

[11] Although the dissent does not say so explicitly, the author appears to disagree with our conclusion that, for jurisdictional purposes, an extension hearing is a continuation of the original commitment proceedings. So the dissent says "because the service provisions of Wis. Stat. § 51.20(10) were not followed [with respect to notice of the Extension Hearing], the circuit court lacked personal jurisdiction over S.L.L." Dissent, ¶57 n.9. However, based on our conclusion above, service of the notice can have no jurisdictional impact because at no point prior to the Extension Hearing did the circuit court's jurisdiction over Ms. L. lapse.

16

Extension Hearing. The procedural rules governing extension hearings appear in Wis. Stat. § 51.20(13)(g)3: "Upon application for extension of a commitment by the department or the county department having custody of the subject, the court shall proceed under subs. (10) to (13)." This, in turn, incorporates our rules of civil procedure (except to the extent they conflict with Chapter 51): "Except as otherwise provided in this chapter, the rules of evidence in civil actions and s. 801.01(2)[12] apply to any judicial proceeding or hearing under this chapter." § 51.20(10)(c).

¶23 The combination of these procedural rules require the County to serve on Ms. L. three items prior to the Extension Hearing. First, by virtue of the incorporation of Wis. Stat. § 801.14,[13] the County must serve the Extension Petition itself.

---

[12] Wisconsin Stat. § 801.01(2) provides:

Chapters 801 to 847 govern procedure and practice in circuit courts of this state in all civil actions and special proceedings whether cognizable as cases at law, in equity or of statutory origin except where different procedure is prescribed by statute or rule. Chapters 801 to 847 shall be construed, administered, and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding.

[13] Wisconsin Stat. § 801.14(1), in pertinent part, provides:

Every order required by its terms to be served, every pleading unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice,

(continued)

17

Second, notice of the Extension Hearing must be served pursuant to Wis. Stat. § 51.20(10)(a) ("Within a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing."). And third, "[w]ithin a reasonable time prior to the final hearing, each party shall notify all other parties of all witnesses he or she intends to call at the hearing and of the substance of their proposed testimony." Id. And although they need not be served, Ms. L.'s counsel must have "access to all psychiatric and other reports 48 hours in advance of the final hearing." § 51.20(10)(b).

¶24 Ms. L. says that is not enough. She contends that the County must serve on her, prior to the Extension Hearing, a "clear and concise statement of the facts that constitute probable cause to believe the allegations of the petition." According to Ms. L., the Extension Petition was deficient because it did not establish probable cause to believe she is mentally ill, a proper subject for treatment, and dangerous within the meaning of Wis. Stat. §§ 51.20(1)(a)2. or 51.20(1)(am). But Ms. L. takes those specifics from § 51.20(1), which governs an initial petition for examination, not a petition for extension of a commitment. Although the County must establish all of those elements at the Extension Hearing,

_____

appearance, demand, offer of judgment, undertaking, and similar paper shall be served upon each of the parties. . . .

18

there is no statutory mandate that it must serve a document with such a factual recitation in advance.[14]  As discussed above, the procedure for extending a person's commitment is governed by Wis. Stat. § 51.20(10) through (13), not § 51.20(1).  Ms. L. identifies nothing in the procedures governing extension hearings that requires service of a document containing the information she demands.  Therefore, there is no statutory support for Ms. L.'s position.

¶25 Nor did the content of the County's notice fail any due process requirements.  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (alteration in original)).  That broad principle applies to the contents of the Extension Hearing notice.  "The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to

---

[14] In Waukesha Cty. v. J.W.J., 2017 WI 57, ¶20, 375 Wis. 2d 542, 895 N.W.2d 783, we held:

> Upon each petition to extend a term of commitment, a county must establish the same elements with the same quantum of proof.  Fond du lac Cty. v. Helen E.F., 2012 WI 50, ¶20, 340 Wis. 2d 500, 814 N.W.2d 179.  However, it may satisfy the "dangerousness" prong by showing "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."

(quoting Wis. Stat. § 51.20(1)(am)).

19

make their appearance." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (citations omitted). It is true that, to assert personal jurisdiction over a respondent, the initiating documents must contain all of the information Ms. L. has identified. See Wis. Stat. § 51.20(1). But the court already had jurisdiction over Ms. L. because an extension hearing is not the commencement of a new proceeding, it is the continuation of an existing case. Ms. L. has identified no constitutional principle requiring a respondent to receive a jurisdiction-conferring quantum of information every time the circuit court conducts a hearing. The notice sent to Ms. L. and her attorney provided the date, time, location, and subject matter of the Extension Hearing. Because the circuit court already had jurisdiction over Ms. L., nothing more was necessary.

### 4. Service of Notice

¶26 In addition to challenging the notice's content, Ms. L. also faults the County for not serving the notice on her personally. She turns to Wis. Stat. § 51.20(2)(b) for the service requirements she believes are applicable to extension hearings. This provision instructs that:

> If the subject individual is to be detained, a law enforcement officer shall present the subject individual with a notice of hearing, a copy of the petition and detention order and a written statement of the individual's right to an attorney, a jury trial if requested more than 48 hours prior to the final hearing, the standard upon which he or she may be committed under this section and the right to a hearing to determine probable cause for commitment within 72 hours after the individual is taken into

20

custody under s. 51.15 . . . .  The officer shall <u>orally inform the individual</u> that he or she is being detained as the result of a petition and detention order issued under this chapter. If the individual is not to be detained, the law enforcement officer shall <u>serve these documents on the subject individual</u> and shall also <u>orally inform the individual</u> of these rights.

§ 51.20(2)(b) (emphasis added).

¶27 But those service provisions are not applicable to a petition to extend a commitment.  As we have already established, the procedures governing commitment extensions are located in Wis. Stat. § 51.20(10)-(13), not § 51.20(2).  Wis. Stat. § 51.20(13)(g)3. ("Upon application for extension of a commitment by the department or the county department having custody of the subject, the court shall proceed under subs. (10) to (13).").[15]  While the governing subsections specify the

---

[15] The dissent is worried that our statement that "the procedures governing commitment extensions are located in Wis. Stat. § 51.20(10)-(13), not § 51.20(2)," <u>supra</u>, ¶27, will displace every other provision in § 51.20.  But this statement does not negate the generally-applicable provisions of § 51.20 any more than it negates the application of the Wisconsin Constitution to extension proceedings. The question at hand, of course, involves identifying which procedures are specific to a petition to extend a defendant's commitment.  And even more specifically, the question bears on how the County must serve notice of an extension hearing.  While it is true that § 51.20(2) directs how service must be made, by its own terms it applies only to the commencement of a commitment proceeding. <u>Id.</u> (Section 51.20(2) applies "[u]pon the <u>filing</u> of a petition for examination.") (emphasis added).  Because a petition to extend a commitment is a continuation of an existing commitment proceeding, § 51.20(2) cannot control how notice of an extension hearing must be accomplished.

content of the notice, and who must be notified,[16] they provide no specific directions with respect to the notification method.[17] They do, however, point us to the answer. Because § 51.20(10)(c) incorporates the rules of civil procedure to the extent they do not conflict with Chapter 51, we need go no further than Wis. Stat. § 801.14(2). There, we see that service on a party represented by an attorney may be accomplished by serving the attorney:

> Whenever under these statutes, service of pleadings and other papers is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party in person is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy or by mailing it to the last-known address, or, if no address is known, by leaving it with the clerk of the court.

---

[16] "Within a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing." Wis. Stat. § 51.20(10)(a).

[17] The dissent, to the contrary, says "the notice requirements set forth in § 51.20(2) apply to all petitions under Ch. 51, including petitions to extend an individual's commitment." Dissent, ¶56. But if that were true, it would make the notice requirement of Wis. Stat. § 51.20(10)(a) entirely superfluous. We try not to read statutory provisions as surplusage. Kalal, 271 Wis. 2d 633, ¶45 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").

§ 801.14(2) (emphasis added). No part of this conflicts with § 51.20(10)-(13), and so it controls service of the Extension Hearing notice.[18]

¶28 The County mailed a copy of the Extension Petition and the Extension Hearing notice to both Ms. L. at her last known address and her counsel. Because notice to her counsel was sufficient pursuant to Wis. Stat. § 801.14(2), it is irrelevant that the copy mailed to Ms. L. was returned as undeliverable. There was no statutory violation in the method of service chosen by the County.

---

[18] The dissent says we are mistaken, and that there really is a conflict between the "notification" provisions of Wis. Stat. § 51.20(10)(a) and the "service" provisions of Wis. Stat. § 801.14(2). Dissent, ¶57 n.7. The dissent's argument, while not adopted by any party to these proceedings, merits some attention.

Ms. L. concentrated solely on the personal service requirement of § 51.20(2)(b). She maintained her focus on that provision even after the County argued in its response brief that § 51.20(10)(c) incorporated the service provisions of § 801.14(2). Perhaps she did not make the dissent's argument because reading a personal-service mandate into the phrase "petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing" would be a difficult task. § 51.20(10)(a). The legislature is familiar with language that requires personal service of a document, as demonstrated by the mandate in § 51.20(2)(b), which requires that "a law enforcement officer shall present the subject individual with a notice of hearing . . . ." There are many ways one may provide "notice." But to "present" something to an individual, one must be (as the word implies) in the person's presence. The dissent would have us read the two provisions as requiring the same thing. Apparently, not even Ms. L. was willing to attempt that equation.

23

¶29 Ms. L. also contends that the County's chosen method of service was constitutionally defective. It is not enough, she says, to go through the motions of sending notice to an affected party. One must use such methods as have a reasonable chance of actually reaching the one to be notified. She directs our attention to Mullane, 339 U.S. at 314, which observed that "[a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Most of Ms. L.'s concerns regarding the constitutional dimension of this method of service, however, were bound up with her belief that the Extension Hearing is a new proceeding for which the County must serve a jurisdiction-conferring document.[19] Because we have rejected that

---

[19] The dissent's insistence that Jones v. Flowers, 547 U.S. 220 (2006), supports Ms. L.'s position is apparently also bound up in that belief. Jones addressed the manner in which the State must provide notice to a homeowner before his house becomes subject to a tax sale. After observing that Ms. L.'s interest in her own well-being is more compelling than Mr. Jones' interest in his property, the dissent asks: "Why, then, is Jones afforded more due process protections than S.L.L.?" Dissent, ¶71.

The answer is that Mr. Jones was not already subject to a court's personal jurisdiction. It is unsurprising that, under that circumstance, the Supreme Court should conclude that something more than a certified letter was necessary before the State took steps to deprive him of his property interest. Because Ms. L. was already subject to the circuit court's jurisdiction, there was no need to use a jurisdiction-conferring method of service for the notice of hearing.

(continued)

24

proposition, she must demonstrate that service pursuant to Wis. Stat. § 801.14(2) suffers some constitutional defect when the court has already established jurisdiction over her.  She has advanced no such argument, and this method of service long ago passed into the realm of settled law:

> [I]t is well-accepted, black-letter law that an attorney is not authorized by general principles of agency to accept on behalf of a client service of process commencing an action. . . .  In contrast, the black-letter law is that once an action has begun and the attorney has appeared in the action on behalf of a party, service of papers may be upon the attorney.

Gangler v. Wisconsin Elec. Power Co., 110 Wis. 2d 649, 657, 329 N.W.2d 186 (1983) (citing § 801.14(2) (1979-80)).

¶30 Further, the very case on which Ms. L. founds her argument adequately answers her constitutional challenge to the method of service employed by the County:  "Thus it has been

---

In any event, even if we granted the dissent's premises, there are two reasons Jones does not create a path to Justice Ann Walsh Bradley's conclusion.  First, the Court did not change the long standing rule that "[d]ue process does not require that a property owner receive actual notice before the government may take his property."  Jones, 547 U.S. at 226 (citation omitted).  And second, the Court also said "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so."  Id. at 225 (emphasis added).

Even today, Ms. L. does not say what the County should have done to reach her.  Neither does the dissent.  That point cannot be emphasized enough.  They both fault the County for the method of service, but offer nothing but a shrug as an alternative. That is not an argument, and there is no need to consider it further.

25

recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Mullane, 339 U.S. at 317. One of the responsibilities Ms. L. agreed to undertake as a condition of leaving the MHC was keeping the County apprised of her current address. She failed to do that. We are not unmindful of the difficulties that mental health issues and homelessness present in these circumstances. But they do not relieve Ms. L. of her obligations, and they do not defeat otherwise constitutional methods of service. Sending notice to her at the homeless shelter was probably a foreseeably futile attempt when made, and we know as a historical matter that she did not receive it. But Ms. L. has not suggested, even now, how the County was supposed to reach her (short of a multi-county manhunt). Ms. L. may not excuse herself from these proceedings through neglect of her duties. Because the County employed a proper method of service, and Ms. L.'s counsel actually did receive notice of the Extension Hearing, we conclude there was no statutory or constitutional infirmity in service of the notice.

### B. Default at a Recommitment Hearing

¶31 The Extension Order was the product, at least in part, of the circuit court's determination that Ms. L. was in default of her obligation to appear at the Extension Hearing. The County says default judgment was appropriate pursuant to the terms of Wis. Stat. § 806.02(5), which provides that "[a]

26

default judgment may be rendered against any party who has appeared in the action but who fails to appear at trial. If proof of any fact is necessary for the court to render judgment, the court shall receive the proof."

¶32 Ms. L. disagrees, and asserts there are two reasons circuit courts may not enter default judgments in Chapter 51 proceedings. First, she says she has a statutory and constitutionally-protected right to be present at the hearing. And second, she says that because Wis. Stat. § 51.20(10)(d) identifies what a circuit court may do when someone fails to appear for a hearing, it may not import the default judgment protocols of Wis. Stat. § 806.02.[20]

¶33 Ms. L. unquestionably had a right to appear at the Extension Hearing: "Except as may otherwise be provided by law, . . . a respondent in a matter listed in sub. (1) is entitled to be physically present in the courtroom at all trials and sentencing or dispositional hearings." Wis. Stat. § 885.60(2)(a). Matters listed in subsection 1 include Chapter 51 proceedings. § 885.60(1). Ms. L. also says her right to appear at the Extension Hearing is constitutionally protected. For that proposition, she cites Addington v. Texas, 441 U.S. 418 (1979); Humphrey v. Cady, 405 U.S. 504 (1972); In re Gault, 387

---

[20] This issue is moot for the same reasons Ms. L.'s jurisdictional challenge is moot. However, we will nonetheless address it for the same reasons we chose to resolve the first issue.

U.S. 1, (1967); and Specht v. Patterson, 386 U.S. 605 (1967).[21] We have no doubt that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington, 441 U.S. at 425. And we also do not doubt that Chapter 51 proceedings are subject to the full complement of due process guarantees. Having said that, none of the cases Ms. L. cited support the proposition that these due process considerations guarantee the right to appear at a Chapter 51 trial in the same way they guarantee the right to appear in a criminal trial. Although we have never directly considered this proposition, we will treat it as established for present purposes.

¶34 To the extent Ms. L. asserts default judgment was inappropriate because she had the right to appear at the Extension Hearing, her argument does not go far enough. Rights may be waived or forfeited——even constitutionally-protected

---

[21] Addington v. Texas, 441 U.S. 418, 419 (1979) (a civil commitment case that answered the question of what "standard of proof is required by the Fourteenth Amendment to the Constitution in a civil proceeding brought under state law[.]"); Humphrey v. Cady, 405 U.S. 504, 505 (1972) (a writ of federal habeas corpus is not barred by every state procedural default, and an evidentiary hearing is required to determine whether petitioner knowingly and intelligently made a deliberate strategic waiver of his claims in state court); In re Gault, 387 U.S. 1 (1967) (a review of a writ of habeas corpus where the Court held that a juvenile has right to notice of charges, to counsel, to confrontation and cross-examination of witnesses, and to privilege against self-incrimination); Specht v. Patterson, 386 U.S. 605 (1967)(a review of a writ of habeas corpus where the Court held that applying a new act to bring new charges against defendant requires compliance with due process).

28

rights.[22] If Ms. L. is to prevail on this argument, she must do more than just posit the existence of her right. She must also explain why her failure to appear should not be counted as a forfeiture of that right. The fact that she did not personally know about the hearing is, in this case, an inadequate response because her own actions made it impossible for her to learn of it. A respondent may not insulate her rights against forfeiture by failing to comply with the obligations to which she agreed.[23] Because Ms. L. did not explain why the right to appear at an

---

[22] See, e.g., State v. Anthony, 2015 WI 20, ¶56, 361 Wis. 2d 116, 860 N.W.2d 10 ("We now conclude that the right to testify may, in appropriate cases, be subject to forfeiture where conduct incompatible with the assertion of the right is at issue."); State v. Cummings, 199 Wis. 2d 721, 756, 546 N.W.2d 406 (1996) ("Therefore, this court holds that there may be situations . . . where a circuit court must have the ability to find that a defendant has forfeited his right to counsel."); Salinas v. Texas, 570 U.S. 178, 190 (2013) ("[F]orfeiture of the privilege against self-incrimination need not be knowing."); State v. Huebner, 2000 WI 59, ¶26, 235 Wis. 2d 486, 611 N.W.2d 727 ("By failing to raise his objection to the use of a six-person jury, [defendant] forfeited his right to a twelve-person jury."); Ness v. Digital Dial Commc'ns, Inc., 227 Wis. 2d 592, 602, 596 N.W.2d 365 (1999) ("A party in default for failing to answer forfeits its due process right to notice of further pleadings."); State v. Jensen, 2007 WI 26, ¶51, 299 Wis. 2d 267, 727 N.W.2d 518 (holding that a defendant can forfeit his right to confront the witnesses against him if he wrongfully causes them to be unavailable to testify against him).

[23] The Transfer, to which Ms. L. agreed, required her to keep a current address on file with the County. This was no mere technicality. This was a condition precedent to release from the MHC. If she had not agreed to it, presumably her inpatient status would have continued, and she would have received actual notice of the Extension Hearing in due course.

extension hearing cannot be forfeited, or at least should not be forfeited under these circumstances, this aspect of her argument against default judgment is insufficiently developed for us to consider further. Clean Wisconsin, Inc. v. Pub. Serv. Comm'n of Wisconsin, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").[24]

¶35 Ms. L.'s second argument against default judgment is that Chapter 51 contains a procedure for dealing with respondents who do not appear at hearings that is inconsistent with the default protocols of Wis. Stat. § 806.02(5). If that

_____

[24] The dissent apparently does not believe a defendant in a Chapter 51 proceeding can forfeit her rights. Dissent, ¶¶73-74. The author says we should be governed by Shirley J.C. v. Walworth Cty., 172 Wis. 2d 371, 379, 493 N.W.2d 382 (Ct. App. 1992), in which the court of appeals held that summary judgment is not available in Chapter 51 proceedings in which the defendant "contests the commitment request." Id. at 373. But Shirley J.C. said nothing about situations in which a defendant does not contest the commitment request. As discussed above, defendants can forfeit even constitutionally-protected rights through their choices and actions. So Shirley J.C. can teach us nothing here unless we were to first hold that Chapter 51 defendants, uniquely amongst all defendants in Wisconsin's courts, are incapable of forfeiting their rights, regardless of what they do or fail to do. There is no "binding caselaw," as the dissent claims, that requires such an unusual conclusion. Dissent, ¶75.

The dissent also says there is no evidence "to support the proposition that S.L.L. forfeited her right to a hearing 'through [her] choices and actions.'" Id., ¶74 n.12 (citation omitted and bracketing in original). But this mischaracterizes the posture of the question. We are not considering whether Ms. L. did forfeit the right to appear at the Extension Hearing. We are merely considering whether it is possible to forfeit the right.

is true, then Ms. L.'s position would be well founded inasmuch as Chapter 51 incorporates the rules of civil procedure "[e]xcept as otherwise provided in this chapter[.]" Wis. Stat. § 51.20(10)(c). Therefore, a circuit court may not grant default judgment if doing so conflicts with a procedure prescribed by Chapter 51.

¶36 Ms. L. identifies Wis. Stat. § 51.20(10)(d) as the provision offended by incorporation of a default judgment option. That provision says that "[i]n the event that the subject individual is not detained and fails to appear for the final hearing the court may issue an order for the subject individual's detention and shall hold the final commitment hearing within 7 days from the time of detention." § 51.20(10)(d). From this, she concludes that "[w]hen a person fails to appear for a final commitment hearing, the statute only gives the circuit court the option of issuing a detention order or not issuing a detention order." "It does not," she says, "give the circuit court the option of dispensing with Chapter 51." Ms. L. correctly notes that issuance of a detention order is optional——the statute says "the court <u>may</u> issue," and we traditionally interpret "may" as permissive. <u>Heritage Farms, Inc. v. Markel Ins. Co.</u>, 2012 WI 26, ¶32, 339 Wis. 2d 125, 810 N.W.2d 465 ("Accordingly, when interpreting a statute, we generally construe the word 'may' as permissive."); <u>see also</u> <u>Zellner v. Cedarburg Sch. Dist.</u>, 2007 WI 53, ¶54, 300 Wis. 2d 290, 731 N.W.2d 240 (citing <u>City of Wauwatosa v. Milwaukee Cty.</u>, 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963))

31

("Generally, in construing statutes, the word 'may' is construed as permissive."). But she incorrectly concludes that, having opted not to issue an order for her detention, the circuit court's hands were tied and it could do nothing else. The statute does not say the circuit court's only options are to issue or not issue a detention order. It simply made a detention order an available tool in Chapter 51 proceedings; it did not displace all of the other tools already in the toolbox.[25]

¶37 Nonetheless, Ms. L. says we should be guided by our decision in Walworth County v. Spalding, in which we concluded the circuit court lacked authority to enter default judgment against a defendant who failed to appear at his trial on a charge of operating a motor vehicle while under the influence of an intoxicant. 111 Wis. 2d 19, 22, 329 N.W.2d 925 (1983). The Spalding circuit court borrowed from Wis. Stat. § 799.22(2)

---

[25] The dissent acknowledges that Wis. Stat. § 51.20(10)(d) makes issuance of a detention order a discretionary decision, but then inexplicably agrees with Ms. L. that the statute's permission to issue such an order simultaneously prohibited the circuit court from employing any other remedy against an absent defendant. That's an awful lot of responsibility to place on the word "may," especially when there is no textual suggestion that the legislature offered courts the option of a detention order in exchange for forfeiting all of the other compliance tools in the toolbox. So the circuit court may enter a default judgment, it may issue a writ of capias, or it may do both. The statute does not foreclose any of these options.

32

(1981-82) for authority to enter default judgment.[26] We held this was error because the traffic code, specifically Wis. Stat. § 345.36 (1981-82), provided the procedure for dealing with defendants who do not appear for trial. That provision says: "If a defendant fails to appear at the date set under this section, the court <u>shall issue a warrant</u> under ch. 968 and, if the alleged violator has posted bond for his appearance at that date, the court may order the bond forfeited." <u>Id.</u> (emphasis added). Because the "shall issue" language was mandatory, we held that "[t]he plain meaning of the statute clearly requires the court to issue a warrant upon the defendant's failure to appear . . . ." <u>Spalding</u>, 111 Wis. 2d at 24. Consequently, "[t]he trial court's entry of the default judgment was contrary to this specific procedure contained in ch. 345 and therefore inappropriate." <u>Id.</u> That is to say, the mandatory warrant procedure in § 345.36 (1981-82) emptied the circuit court's toolbox of all other tools for addressing a failure to appear at trial.

¶38 The lesson to take from Spalding, therefore, is that a context-specific and mandatory procedure will displace a contrary general rule of civil procedure. Here, issuance of a detention order under Wis. Stat. § 51.20(10)(d) is context

---

[26] This statute provides: "<u>When defendant fails to appear</u>. If the defendant fails to appear on the return date or on the date set for trial, the court may enter a judgment upon due proof of facts which show the plaintiff entitled thereto." Wis. Stat. § 799.22(2) (1981-82) (emphasis in original).

specific, but it is not mandatory. Therefore, it does not preclude the use of non-conflicting general rules of civil procedure. Circuit courts have the authority, pursuant to Wis. Stat. § 806.02(5), as incorporated by § 51.20(10)(c), to enter default judgment for failing to appear at properly-noticed hearings in which the court has jurisdiction over the person. In this case, the circuit court had jurisdiction over Ms. L., the Extension Hearing had been properly noticed, Ms. L. had previously appeared in the action (specifically, at the initial commitment hearing), and she failed to appear for trial. That satisfies the prerequisites for entry of default under § 806.02(5). Whether the circuit court had adequate evidence available upon which to make the findings necessary to support the Extension Order is the subject of Ms. L.'s third issue.

C. Sufficiency of Evidence/Due Process

¶39 Ms. L. says there was insufficient evidence of record to support the circuit court's entry of the Extension Order, and so she asks us to vacate it. But as we discussed above, the passage of time has acted as a functional (if not de jure) vacatur because the Extension Order no longer has any force or effect. And that would seem to make this issue moot just like the first two. Ms. L., however, insists this issue is not like the others. She believes she is still subject to legal injury because the simple expiration of the Extension Order does not "expunge the court records, or invalidate the examining physician reports." She is also concerned that Wis. Stat. § 51.30(3)(b) allows any corporation counsel to access her files

34

and court records for the purpose of preparing for "commitment and recommitment proceedings, reexaminations, appeals, detentions, and commitments under Chapters 55, 971, 975 or 980." Not only that, she says, § 51.30(4)(b)(5) "gives DHS [Department of Health Services] staff access to all of S.L.L.'s treatment records to determine her progress and the least restrictive or more appropriate treatment modalities and facilities," and § 51.30(4)(b)(11) "gives corporation counsel full access to treatment records 'without modification, at any time' to prepare for commitments, recommitments, patient's rights claims, or actions under Chapters 48, 971, 975, or 980."

¶40 For the purpose of determining whether this issue is moot, we will assume that Ms. L. correctly recites what may be done with her records. But even accepting all of that, we do not agree that resolving this issue can "have any practical effect upon an existing controversy." Leitner, 253 Wis. 2d 449, ¶13. If we reviewed the evidentiary basis for the Extension Order and found it lacking, the proper response would be to reverse the court of appeals and direct vacatur of the order. But vacatur is not the same thing as expungement. The Extension Order would still be a matter of record; it would simply have no operative effect. And vacating the Extension Order would have absolutely no effect at all on Ms. L.'s examining physician reports, treatment records, court files, or records relating to previous proceedings in this case. So corporation counsel and DHS staff would still be able to access them for the purposes Ms. L. described. Therefore, successfully challenging the

35

evidentiary basis of the Extension Order would not protect Ms. L. against any of the consequences that give her concern. This issue is moot.

¶41 As we demonstrated above, we sometimes review issues even though they are moot. There are five recognized circumstances in which we will do so, two of which we have already discussed. The other three involve situations in which "the constitutionality of a statute is involved" (which is obviously not the case here), or "where the precise situation under consideration arises so frequently that a definitive decision is essential to guide the trial courts," or "where the issue is likely to arise again and should be resolved by the court to avoid uncertainty." Id., ¶14. Challenges to the sufficiency of evidence are necessarily fact-bound inquiries that will vary from case to case. Therefore, a definitive decision in this case would provide no guidance to circuit courts, nor would it preclude uncertainty in evaluation of evidentiary sufficiency in other cases. There is no reason to deviate from our mootness doctrine with respect to this issue.

¶42 Additionally, the County argued that Ms. L. did not preserve this issue for appellate review. The Extension Hearing transcript reveals that Ms. L.'s counsel raised no objection with respect to the sufficiency of the evidence. To avoid waiver, litigants must lodge their trial objections contemporaneously with the error. See Wis. Stat. § 805.11(1) ("Any party who has fair opportunity to object before a ruling or order is made must do so in order to avoid waiving error.").

36

And when a party raises an objection, it "must specify the grounds on which the party predicates the objection or claim of error." § 805.11(2). There are no exceptions to these requirements. § 805.11(3) ("Exceptions shall never be made."). Ms. L. did not respond to the County's argument on this point, and so we take it as conceded. Hoffman v. Econ. Preferred Ins. Co., 2000 WI App 22, ¶9, 232 Wis. 2d 53, 606 N.W.2d 590 (Ct. App. 1999) ("An argument to which no response is made may be deemed conceded for purposes of appeal.").

## IV. CONCLUSION

¶43 We hold that, for purposes of personal jurisdiction in a Chapter 51 proceeding, an extension hearing is a continuation of the original commitment proceeding and previous extension hearings. Therefore, the circuit court had jurisdiction over Ms. L. both at the Extension Hearing and when it entered the Extension Order because both occurred prior to expiration of the Initial Commitment. Consequently, the method of service and content of the notice of the Extension Hearing were neither statutorily nor constitutionally infirm. We also hold that, with respect to extension hearings conducted pursuant to Wis. Stat. § 51.20(13)(g)3., circuit courts have the authority to enter default judgments in compliance with Wis. Stat. § 806.02(5). We choose not to review the evidentiary foundation for the Extension Order because the issue is moot and was not preserved for appellate review.

*By the Court*.—The decision of the court of appeals is affirmed.

37

¶44 ANN WALSH BRADLEY, J. *(dissenting).* In seeking to extend the involuntary commitment of S.L.L., Waukesha County encountered a problem: S.L.L., a homeless individual, was nowhere to be found. As a result, she did not receive notice of the County's intent to extend her commitment.

¶45 Regardless, the County forged ahead with commitment proceedings. In S.L.L.'s absence, it obtained from the circuit court a default order extending S.L.L.'s commitment. Additionally, it sought and received an order authorizing the involuntary administration of psychotropic medication.

¶46 Despite the injustice apparent on the face of such an in absentia procedure, the majority declares that individuals may be defaulted into civil commitment without notice of the commitment hearing. It creates a procedural end-run around a merits hearing in which an individual's physical liberty hangs in the balance.

¶47 Worse yet, it permits subjecting an individual to involuntary——including forced——administration of psychotropic medication immediately upon the individual's detention, without assessing dangerousness and without providing notice or an opportunity to be heard.

¶48 Psychotropic medication is not aspirin. Such powerful medications are mind-altering and can have severe and irreversible side effects——immobilizing mind and body.[1]

¶49 Because neither Wisconsin statutes nor due process countenance such in absentia orders, I respectfully dissent.

I

¶50 S.L.L. had been previously subject to a Chapter 51 mental commitment. Before that commitment expired, the County applied to the circuit court for a 12-month extension of her commitment. Majority op., ¶6. The circuit court scheduled a hearing on the petition and sent a notice of the hearing to S.L.L.'s attorney and to her last known address——a homeless shelter from which she had been banned.[2] Id. Not surprisingly, the notice directed to S.L.L. was returned as undeliverable.[3] Id.

---

[1] The administration of psychotropic drugs is no trifling matter. See K.N.K v. Buhler, 139 Wis. 2d 190, 207 n.3, 407 N.W.2d 281 (Ct. App. 1987); In re Guardianship of Roe, 421 N.E.2d 40, 436-37 (Mass. 1981) (explaining that antipsychotic medication "[is] powerful enough to immobilize mind and body[,]" has a "profound effect . . . on the thought processes of an individual[,]" and has a "well-established likelihood of severe and irreversible adverse side effects . . . .").

[2] A report from the Waukesha County Community Human Services Department in the record notes that S.L.L. was "not permitted to be [at the homeless shelter] due to her behavior."

[3] The majority's characterization of the facts is misleading. It accuses S.L.L. of "absconding" from treatment. Majority op., ¶5. To "abscond" means "[t]o depart secretly or suddenly, esp. to avoid arrest, prosecution, or service of process." Black's Law Dictionary 8 (10th ed. 2014).

(continued)

¶51 On the appointed day for the extension hearing, S.L.L., having received no notice, was not present. Id., ¶7. Nevertheless, the circuit court proceeded in her absence. Id. Her attorney attended and made arguments on her behalf.[4] Id.

¶52 After determining that S.L.L. remained subject to its jurisdiction, the circuit court found: "She has not appeared here today. She's in default of her right to object." See id. Based on S.L.L.'s alleged default, the circuit court extended her commitment: "I'm [going to find] the elements, based upon that default, to extend. . . . I'll find that she continues to be mentally ill. I'll find that she is a proper subject for treatment . . . ."

¶53 Accordingly, the circuit court extended S.L.L.'s commitment for twelve months. Id. It further ordered that the County be authorized to involuntarily medicate S.L.L. for the duration of her commitment. Id.

¶54 The majority determines that the circuit court's procedure as delineated above complied with both statutory and constitutional requirements. In the majority's view, service of the notice of hearing on S.L.L.'s attorney was sufficient and it is "irrelevant that the copy mailed to Ms. L. was returned as

---

There is not a single shred of evidence in the record to support the assertion that S.L.L. "absconded" from treatment. Indeed, there is no evidence in the record to support any conclusions as to why S.L.L. stopped showing up for her scheduled treatments.

[4] S.L.L.'s attorney had not heard from S.L.L. and had no information as to her whereabouts. Majority op., ¶7 n.7.

3

undeliverable." Id., ¶28. It further posits that although "[s]ending notice to her at the homeless shelter was probably a foreseeably futile attempt when made," it was nevertheless constitutionally sufficient due to S.L.L.'s "failure" to "keep[] the County apprised of her current address." Id., ¶30.

II

¶55 The majority errs in its interpretation of Wis. Stat. § 51.20.

¶56 In an initial misstep, the majority erroneously claims that Wis. Stat. §§ 51.20(10)-(13) are the only provisions that govern the procedure for commitment extension hearings. See majority op., ¶27. It is true that § 51.20(13)(g)3. directs the court to subsections (10)-(13) "[u]pon application for extension of a commitment[,]" but in order to "apply" for a commitment extension, the government is required to file a petition under § 51.20(1).[5] The notice requirements set forth in § 51.20(2) apply to all petitions under ch. 51, including petitions to extend an individual's commitment. Additionally, even a cursory

---

[5] We know that compliance with Wis. Stat. § 51.20(1) is required for commitment extension proceedings because § 51.20(1)(am) provides an alternate path to prove an individual's dangerousness that can only be taken "[i]f the individual has been the subject of inpatient treatment . . . immediately prior to commencement of the proceedings . . . ."

4

review of § 51.20 as a whole reveals that other subsections are applicable as well.[6]

¶57 Even if one were to wear textual blinders as the majority wishes, Wis. Stat. § 51.20(10)(a) explicitly requires the government to notify "the subject individual <u>and</u> his or her counsel of the time and place of final hearing."[7] This stands in contrast to other provisions in § 51.20, under which statutorily-sufficient service can be accomplished by serving

---

[6] For example, Wis. Stat. § 51.20(3) provides that at the time a petition for commitment is filed, the court is required to ensure that the subject individual is represented by adversary counsel by referring the individual to the state public defender. Is it the majority's position that this subsection does not apply to commitment extension proceedings?

Similarly, § 51.20(5)(a) states that all hearings required to be held under Chapter 51 "shall conform to the essentials of due process and fair treatment including the right to an open hearing, the right to request a closed hearing, the right to counsel, the right to present and cross-examine witnesses, the right to remain silent and the right to a jury trial if requested under sub. (11)." Is it the majority's position that this subsection does not apply to commitment extension proceedings?

[7] The majority relies on Wis. Stat. § 801.14(2), asserting that service upon S.L.L.'s attorney is sufficient. Majority op., ¶27. It contends that "[n]o part of this [statute] conflicts with § 51.20(10)-(13), and so it controls service of the Extension Hearing notice." <u>Id.</u>

However, the majority acknowledges that Chapter 801 is incorporated into Chapter 51 only to the extent it does not conflict with Chapter 51. <u>Id.</u>, ¶22. Wis. Stat. § 51.20(10)(a) requires the government to notify "the subject individual <u>and</u> his or her counsel of the time and place of final hearing" (emphasis added). Section 801.14(2) does not require service on the subject individual and therefore conflicts with § 51.20(10)(a). There is no need to go to Chapter 801 for an answer that Chapter 51 already provides.

5

only the subject individual's counsel.[8] "And" does not mean "or." Pursuant to § 51.20(10), service of notice upon S.L.L.'s attorney, but not S.L.L., was statutorily insufficient.[9]

¶58 The majority compounds its error in statutory interpretation by misreading Wis. Stat. § 51.20(10)(d). This subsection provides a procedure to follow in just the situation that arose here: "In the event that the subject individual is not detained and fails to appear for the final hearing the court may issue an order for the subject individual's detention and shall hold the final commitment hearing within 7 days from the time of detention." § 51.20(10)(d).

¶59 Although I acknowledge, as the majority does, that the first clause of Wis. Stat. § 51.20(10)(d) contains permissive "may" language, the second clause of the statute contains mandatory "shall" language. See majority op., ¶36. The statute

---

[8] See, e.g., Wis. Stat. § 51.20(8)(bg) (notice of subject individual's noncompliance with treatment agreement sent only to subject individual's counsel, not the subject individual); § 51.20(11) (right to jury trial deemed waived unless demanded at least 48 hours in advance of final hearing provided that either the subject individual or her counsel received notice of the final hearing).

[9] As the majority acknowledges, compliance with "statutory provisions regarding service of process is required before a [] court has personal jurisdiction." Majority op., ¶12 (citing State v. Aufderhaar, 2005 WI 108, ¶27, 283 Wis. 2d 336, 700 N.W.2d 4). The majority further acknowledges that "if Ms. L. is right about having not received proper notice, the Extension Order was void from the beginning" for want of personal jurisdiction. Majority op., ¶13. This is a correct statement. Accordingly, because the service provisions of Wis. Stat. § 51.20(10) were not followed, the circuit court lacked personal jurisdiction over S.L.L.

6

provides that the final commitment hearing shall be held within seven days from the time of detention. Pursuant to the statute, if there is no detention, the final hearing cannot be held. As S.L.L. argues in her reply brief, "When a person fails to appear for a final commitment hearing, the statute only gives the circuit court the option of issuing a detention order or not issuing a detention order. It does not give the circuit court the option of dispensing with Chapter 51."

¶60 Chapter 51 contains no default judgment provision. Nevertheless, the majority ignores the statutorily mandated procedure and reaches out to utilize a default judgment procedure found nowhere in the text of the chapter.[10] This allows for the involuntary commitment and medication of an

---

[10] The majority says that "there is no textual suggestion that the legislature offered courts the option of a detention order in exchange for forfeiting all of the other compliance tools in the toolbox." Majority op., ¶36 n.25.

The issuance of a default judgment is not a "compliance tool." The statutorily-prescribed "compliance tool" is the issuance of a detention order. The subject individual's "compliance" is compelled by being detained and brought before the court within a short period of time for the purpose of conducting a hearing on the merits of the government's commitment petition. Wis. Stat. § 51.20(10)(d).

Here, the circuit court issued both a default judgment and a detention order. One wonders whether the detention order was a pointless "compliance tool" when issued in conjunction with a default judgment. That is, why would a court issue a detention order for the purpose of detaining the individual and holding a final hearing on the merits if a default order for commitment extension has already been issued, and the individual must first obtain relief from the default judgment before proceeding to the final ch. 51 merits hearing?

7

individual without any in-person assessment regarding the individual's dangerousness. See Wis. Stat. § 51.20(1)(a)2. Additionally, it permits subjecting an individual to involuntary——even forced——administration of psychotropic medication immediately upon detention without any notice or the opportunity to be heard.

III

¶61 The majority further errs by approving an egregious violation of due process.

¶62 "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" Mathews v. Eldridge, 424 U.S. 319, 348 (1976). Although due process does not require actual notice, due process does require the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).

¶63 Jones v. Flowers, 547 U.S. 220 (2006), provides an apt comparison. In Jones, the Supreme Court discussed the notice that is due before the government may extinguish an individual's rights in real property to satisfy a tax delinquency. Id. at 223.

¶64 Jones was delinquent on his property taxes, and the State of Arkansas sought to sell his property to satisfy the delinquency. Id. at 223-24. The Commissioner of State Lands

8

attempted to notify Jones of his delinquency and his right to redeem the property by mailing a certified letter to Jones at the delinquent property, but the letter was returned, unopened, and marked "unclaimed". Id.

¶65 Two years later, and just a few weeks before the public sale, the Commissioner published a notice of public sale in a local newspaper. Id. at 224. The Commissioner mailed another certified letter to Jones at the delinquent property attempting to notify him that his house would be sold if he did not pay his taxes. Id. This second letter was also returned, unopened, and marked "unclaimed," and the property was sold. Id.

¶66 The Supreme Court concluded "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property." Id. at 225. Its determination rested on the principle that "when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it, and that assessing the adequacy of a particular form of notice requires balancing the interest of the State against the individual interest sought to be protected by the Fourteenth Amendment." Id. at 229 (internal quotations and citations omitted).

¶67 By way of analogy, the Court likened the Commissioner's inaction in the face of the unclaimed letters as akin to the Commissioner watching the postman accidentally drop

9

the notice down a storm drain without bothering to prepare and send a new notice. Id. "No one 'desirous of actually informing' the owners would simply shrug his shoulders as the letters disappeared and say 'I tried.'" Id.

¶68 Here, the facts and consequences are even more egregious than those in Jones. In Jones, the Commissioner did not know that notice would be ineffective at the time he sent the certified letters to the delinquent property. On the other hand, in this case, the County sent notice to the one location in Wisconsin that it knew S.L.L. would not be——the homeless shelter from which she had been banned. No one desirous of actually informing S.L.L. of the commitment extension hearing would have mailed notice to a place known to have banned S.L.L. and then called it quits. The Constitution requires that additional reasonable steps be taken to attempt to provide notice to the affected party.

¶69 Yet, the majority today accepts the very argument that was rejected by the Supreme Court in Jones. The Commissioner in Jones argued that reasonable follow-up measures were not required because "notice was sent to an address that Jones provided and had a legal obligation to keep updated." Id. at 231. Rejecting this argument, the Court determined that Jones' failure to comply with a statutory obligation to keep his address updated did not forfeit his right to constitutionally-sufficient notice. Id. at 232 (citations omitted).

¶70 The County makes the same argument in this case. Rather than follow Jones, however, the majority instead places

10

the blame for not receiving notice at the feet of S.L.L. This is particularly troubling because S.L.L., who previously was determined to be mentally ill, has experienced homelessness and may still be homeless. The government is required "to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." Id. at 230. Yet, the majority relieves the County of this requirement.

¶71 Jones dealt with the process due before extinguishing an individual's property rights. Id. at 223. S.L.L.'s interest in this case, i.e., her physical liberty and interest in avoiding the involuntary administration of psychotropic medication, must be at least as important as Jones' property rights. Why, then, is Jones afforded more due process protections than S.L.L.? The majority does not (and cannot) explain.[11]

¶72 In addition to disregarding binding federal case law, the majority also contradicts binding Wisconsin case law. Specifically, in Shirley J.C. v. Walworth Cty., 172 Wis. 2d 371, 373, 493 N.W.2d 382 (Ct. App. 1992), the court of appeals concluded that granting summary judgment to the county in the context of a Chapter 51 commitment violated due process.

---

[11] If the Supreme Court in Jones had based its analysis on the court's lack of personal jurisdiction over Jones, as the majority claims, one would expect a discussion of personal jurisdiction in the opinion. See majority op., ¶29 n.19. Not only did the Supreme Court not discuss personal jurisdiction in Jones, it did not even mention the term.

11

¶73 It observed that Wis. Stat. § 51.20 does not allow commitment without a hearing, and if summary judgment were allowed, "the hearing requirement in the statute would be meaningless." Id. at 378. Paramount to the court of appeals' analysis was that the final hearing in a Chapter 51 case determines whether the subject individual will lose her liberty. Id. at 379-80.

¶74 If summary judgment is disallowed in a Chapter 51 commitment case, how can it be that default judgments are allowed?[12] Chapter 51 is explicit that a final hearing on the merits must be held before the subject individual is committed. Id. at 378 (citing Wis. Stat. § 51.20(10)(c)). Yet, by allowing an individual to be defaulted into commitment, the majority creates a loophole by which that final hearing can be avoided and involuntary psychotropic medication can be administered immediately upon the individual's detention without an assessment of dangerousness and with no hearing whatsoever.

¶75 Unlike the majority, I would follow binding case law and conclude that the County failed to take constitutionally-sufficient steps to provide notice of the commitment extension

---

[12] The majority claims that its analysis can live in harmony with Shirley J.C. v. Walworth Cty., 172 Wis. 2d 371, 493 N.W.2d 382 (Ct. App. 1992). It says that default judgments in ch. 51 cases are justified because, in such instances, individuals have "forfeited" their rights "through their choices and actions." Majority op., ¶34 n.24. This statement ignores the fact that S.L.L. received no notice of her final hearing, and there is no evidence whatsoever to support the proposition that S.L.L. forfeited her right to a hearing "through [her] choices and actions." See supra, ¶7 n.3.

hearing to S.L.L., resulting in a default judgment of commitment that violates due process.

¶76 For the foregoing reasons, I respectfully dissent.

¶77 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and REBECCA FRANK DALLET join this dissent.