COURT OF APPEALS
DECISION
DATED AND FILED

May 12, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP6**

Cir. Ct. No. **2006ME163**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF M.W.:

SHEBOYGAN COUNTY,

    PETITIONER-RESPONDENT,

  V.

M.W.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Sheboygan County: KENT R. HOFFMANN, Judge. *Reversed and remanded*.

¶1     GUNDRUM, J.[1]  M.W. appeals from an order of the circuit court extending her involuntary mental health commitment and also challenges an order for involuntary medication and treatment.  She argues that the circuit court failed to specifically identify the WIS. STAT. § 51.20(1)(a)2. subdivision paragraph or paragraphs on which it based its recommitment and medication orders, the County failed to present sufficient evidence that M.W. was "dangerous" pursuant to WIS. STAT. ch. 51, and the County failed to provide M.W. with sufficient notice of the standard of dangerousness under which it was pursuing her recommitment.  We reverse on the first ground, but only after addressing the "notice" issue.

### Background

¶2     M.W. has been the subject of commitment orders under WIS. STAT. ch. 51 since 2006.  In August 2020, the County filed the present petition to extend M.W.'s mental health commitment.  The County also sought an involuntary medication and treatment order.  Prior to the hearing on the recommitment, M.W. filed a motion in limine seeking inter alia notice forty-eight hours prior to the recommitment hearing of which standard of dangerousness under WIS. STAT. § 51.20(l)(a)(2)a.-e. the County intended to proceed.

¶3     The circuit court held a hearing on the petition on October 9, 2020.  The court denied M.W.'s motion in limine concluding, as relevant here, that nothing required the County to "identify precisely which [standard of dangerousness it is] going to proceed under and the doctor's report does have that information contained in it."  Dr. Marshall Bales, the independent examiner who

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

interviewed M.W., and Emilee Sesing, the case worker assigned to M.W., testified for the County at the recommitment hearing. M.W. also testified.

¶4      The circuit court granted the County's petition for recommitment and entered an order for involuntary treatment and medication. The court concluded that the County proved by clear and convincing evidence that M.W. suffers from a mental illness, that she would be a proper subject for commitment if treatment were withdrawn, and that she is a danger to herself or others. M.W. appeals.[2]

### Discussion

¶5      As relevant here, for the circuit court to order an extension of M.W.'s involuntary mental health commitment, the County had to prove by clear and convincing evidence that she is mentally ill, a proper subject for treatment, and dangerous pursuant to WIS. STAT. §§ 51.20(1)(a)2., 51.20(1)(am). *See* § 51.20(1)(a), (13)(e); *see also* **Waukesha County v. J.W.J.**, 2017 WI 57, ¶20, 375 Wis. 2d 542, 895 N.W.2d 783 ("Upon each petition to extend a term of commitment, a county must establish the same elements [as an initial commitment] with the same quantum of proof."). M.W. does not dispute the circuit court's conclusions that she is mentally ill and a proper subject for treatment. She insists, however, that the court erred in concluding the County met its burden to prove she is dangerous. Additionally, M.W. argues that the County failed to provide her with sufficient notice of the standard of dangerousness under § 51.20(1)(a)2. under which it was pursuing her recommitment, and that the court

---

[2] Although M.W. challenges the circuit court order for involuntary medicine and treatment, she does not address that order separately.

failed to comply with the requirement set forth by our supreme court in ***Langlade County v. D.J.W.***, 2020 WI 41, ¶¶40, 45, 59, 391 Wis. 2d 231, 942 N.W.2d 277, that it identify the statutory standard of dangerousness it relied upon in ordering M.W.'s recommitment.

¶6      Whether the County has met its burden of proof to support M.W.'s recommitment presents a mixed question of law and fact. *See **J.W.J.***, 375 Wis. 2d 542, ¶15. "[T]he circuit court's findings of fact are reviewed for clear error, but application of those facts to the statute and interpretation of the statute are reviewed independently." ***Winnebago County v. Christopher S.***, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109. "Due process determinations are questions of law we decide de novo." ***Waukesha County v. S.L.L.***, 2019 WI 66, ¶10, 387 Wis. 2d 333, 929 N.W.2d 140 (citation omitted).

Notice

¶7      M.W. asserts that her due process rights were violated because the County failed to identify in advance of the recommitment hearing a specific WIS. STAT. § 51.20(1)(a)2. paragraph(s) under which it was seeking recommitment. With regard to proceedings under WIS. STAT. ch. 51, a harmless error rule applies. *See **Winnebago County v. A.A.L.***, No. 2020AP1511, unpublished slip op. ¶13 (WI App Mar. 24, 2021)[3]; *see also* sec. 51.20(10)(c) ("The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party.").

---

[3] Any unpublished cases referred to in this decision are relied upon because of their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

¶8　In this case, Dr. Bales' report presented facts and utilized language suggesting that subdivision paragraphs d. and e. were at issue.[4]　*See A.A.L.*, No. 2020AP1511, ¶13 (addressing a similar "notice" issue, we observed that "the examiners' reports indicated [to A.A.L.] the standards the examiners believed were applicable to A.A.L.").　We note that M.W. put forth a vigorous defense at the hearing and, significantly, she fails to identify on appeal what if anything she would have done differently if the County had provided more specific notice than what it provided through the doctor's report.[5]　While M.W. briefly claims that any notice error amounted to structural error, this point is undeveloped and raised for the first time in her reply brief, therefore we do not consider it.　*See ABKA Ltd. P'ship v. Board of Rev.*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) ("This court will not address undeveloped arguments."); *Brooks v. Hayes*, 133 Wis. 2d

---

[4] In the section of Dr. Bales' report entitled "Relevant information relative to dangerousness," Bales summarizes (after previously providing specific factual details):

> This individual *does not appear to be suicidal nor physically assaultive* and that is validated by the review of many recent records, however, this individual is clearly endangered due to her *inability to care for her basic needs*. She has grossly impaired insight. There was an effort made to set her up with an *apartment* independently, but reportedly that "lasted 24 hours." She *cannot care for herself adequately* due to her severe manic and psychotic condition. She has a tendency to not pursue voluntary treatment either and *if left untreated is going to suffer severe mental, emotional or physical harm that is going to affect her ability to function independently in the community*. If she were to have her commitment allowed to expire, in my opinion, she will almost certainly be endangered in a very short order. She will stop her medications as well and will become a proper subject for commitment quickly.

(Emphasis added.)

[5] The most M.W. asserts on appeal is that "had she known under which standard of dangerousness the County was going to pursue the recommitment, she *may* have prepared differently, including *possibly* calling different witnesses." (Emphasis added.)

228, 241, 395 N.W.2d 167 (1986) ("The general rule is that this court will not consider arguments raised for the first time on appeal or review."). We conclude that M.W.'s substantial rights were not affected by the County's failure to provide greater specificity with regard to the subsections under which it was pursuing her recommitment. *See also* **Winnebago County v. D.D.A.**, No. 2020AP1351, unpublished slip op. ¶11 (WI App Dec. 23, 2020).

Failure to follow *D.J.W.* "requirement"

¶9      One year ago, in **Langlade County v. D.J.W.**, our supreme court unambiguously stated, repeatedly, that it was instituting a new "requirement" that "going forward" "circuit courts in recommitment proceedings are to make specific factual findings with reference to *the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based*." **D.J.W.**, 391 Wis. 2d 231, ¶¶40, 45, 59 (emphasis added). The court noted the "important liberty interest at stake" with a recommitment and further added that where involuntary medication is a possibility, "[t]he stakes of a recommitment proceeding are further heightened," adding that "[a]dministration of psychotropic drugs is no small matter." *Id.*, ¶43 & n.7. As we stated after *D.J.W.* "[t]hese cases should be held to the highest legal standards." **A.A.L.**, No. 2020AP1511, ¶17. The reasons for this are to "provide[] clarity and extra protection to patients regarding the underlying basis for a recommitment," "ensure that recommitments are based on sufficient evidence," "clarify issues raised on appeal of recommitment orders," and "ensure the soundness of judicial decision-making, specifically with regard to challenges based on the sufficiency of the evidence." **D.J.W.**, 391 Wis. 2d 231, ¶¶42–44.

¶10 In this case, the record shows, and the County acknowledges that the circuit court failed to state the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which it based M.W.'s recommitment. Furthermore, in its ruling, the court failed to clearly track the necessary elements of any particular subdivision paragraph and state how the evidence satisfied those elements. In *D.J.W.*, our supreme court fully intended to do away with the "guesswork" of WIS. STAT. ch. 51 proceedings and require the circuit courts to be clear and specific, for the reasons already stated. *D.J.W.*, 391 Wis. 2d 231, ¶45 ("In the future, such guesswork will be avoided by our newly instituted requirement for specific factual findings with reference to a subdivision paragraph of § 51.20(1)(a)2."). Such clarity and specificity is lacking in the court's ruling in this case, and we will not engage in guesswork to determine whether the County provided sufficient evidence to satisfy the dangerousness requirement of § 50.20(1)(a)2. *See Rock Cnty. DHS v. J.E.B.*, 2020AP1954-FT, unpublished slip op. ¶26 (WI App Apr. 7, 2021) ("The County essentially asks that [we] engage in the kind of 'guesswork' that *D.J.W.* seeks to avoid. [We] decline to engage in such guesswork on appeal.").

¶11 Oftentimes evidence presented at a recommitment hearing will relate to more than one subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. Elements from one paragraph may be met with some of the evidence referenced by the circuit court and elements of a different paragraph may be met with the same or different evidence referenced by the court. *D.J.W.* made it clear that it is not the job of an appellate court to try to piece together court comments like pieces of a jigsaw puzzle in an effort to figure out what the picture is. The circuit court should state precisely under what subdivision paragraph the court is determining dangerousness and, of course, identify the specific elements necessary for a

determination of dangerousness under that subdivision paragraph and the evidence that meets the various elements.

¶12    The County asserts that despite the circuit court failing to "specify by statute number which of the standards under [WIS. STAT.] § 51.20(1)(a)2.a.-e. M.W. would become dangerous under if treatment were withdrawn[,]" we can nonetheless divine that the court found that M.W. would become dangerous under § 51.20(1)(a)2.e.  This is not clear from the record and, as stated, we will not engage in the "guesswork" that our supreme court attempted to end with its decision in *D.J.W.*  While it is true that the circuit court here at one point stated "there is a substantial probability that if left untreated she is going to lack the services necessary for her health or safety" and this statement tracked some of the language from subdivision paragraph e., other key parts of subdivision paragraph e. are absent.  For example, subdivision paragraph e. requires a finding not only that there is a "substantial probability that [M.W.] will, if left untreated, lack services necessary for … her health or safety" but immediately thereafter continues with "and suffer severe mental, emotional, or physical harm that will result in the loss of [her] ability to function independently in the community or the loss of cognitive or volitional control over … her thoughts or actions."  We can find no language in the court's decision clearly referencing this latter, but critical, language.

¶13    Furthermore, in its ruling, the circuit court discusses "recent acts" by M.W. demonstrating her "impaired judgment," particularly related to "recent acts" of a "delusional" phone call M.W. had with Dr. Bales and an incident months earlier in which M.W. "eloped" from the treatment facility she was at and made her way to New Mexico with her boyfriend.  The court found Dr. Bales' testimony credible related to M.W. being "a danger to herself or others."  This language

could have been an attempt by the court to make a finding of dangerousness under subdivision paragraph c., which requires that the individual "[e]vidences such *impaired judgment*, manifested by evidence of a pattern of *recent acts* or omissions, that there is a substantial probability of *physical impairment or injury to* himself or *herself or other individuals*." *See* WIS. STAT. § 51.20(1)(a)2.c. (emphasis added).

¶14    In *J.E.B.*, 2020AP1954-FT, we recently addressed an issue similar to this. As in this case, in *J.E.B.*, it was "undisputed that the circuit court did not cite any" of the subdivision paragraphs a.-e. *See J.E.B.*, 2020AP1954-FT, ¶21. Despite the fact that some of the court's comments could be construed to "tie back" or "allude" to a specific paragraph, we held that such comments were "insufficient" and failed to "satisfy" the *D.J.W.* requirement that the court make "specific factual findings" regarding a standard in a particular paragraph "'with reference to' that paragraph." *J.E.B.*, 2020AP1954-FT, ¶¶23, 25 (citation omitted). Our remedy was to "reverse the court's recommitment and involuntary medication orders" and "remand [the] matter to the circuit court with directions to follow the dictates of *D.J.W.*" *Id.*, ¶27. We added that

> [i]f, on remand, and after further review of the evidence, *D.J.W.*, and the five dangerousness standards in WIS. STAT. § 51.20(1)(a)2.a.-e., the circuit court again determines that the County has met its burden of showing current dangerousness under § 51.20(1)(a)2., then the court must "make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based" as required by *D.J.W.*

*Id.* (citation omitted). We follow this same remedy in this case and thus reverse and remand.

*By the Court.*—Order reversed and remanded.

9

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.