COURT OF APPEALS
DECISION
DATED AND FILED

December 16, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP678**

STATE OF WISCONSIN

Cir. Ct. No. **2020ME63**

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE CONDITION OF P.P.:

ROCK COUNTY,

    PETITIONER-RESPONDENT,

  V.

P. P.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Rock County: DANIEL T. DILLON, Judge. *Affirmed*.

¶1     BLANCHARD, P.J.[1]  In April 2020, the circuit court ordered P.P. to be subject to an involuntary mental health commitment and an involuntary medication or treatment order pursuant to WIS. STAT. ch. 51.  P.P. challenges only the involuntary medication or treatment order, arguing that the evidence was insufficient to meet Rock County's burden of proof by clear and convincing evidence.  I conclude that the only issue raised on appeal is moot and that no exception to the mootness doctrine applies.  Accordingly, I affirm the circuit court without reaching the merits.

## BACKGROUND

¶2     P.P. was placed in emergency detention in Winnebago Mental Health Institute in March 2020, and the police officer who took him into custody filed a statement of emergency detention.  *See* WIS. STAT. § 51.15(5) ("The filing of the statement [of emergency detention by a law enforcement officer] has the same effect as a petition for commitment under [WIS. STAT. §] 51.20.");  § 51.20(1), (7)(a).  The circuit court held a final hearing in April 2020 to determine whether P.P. met the criteria for an order for involuntary commitment and an order for involuntary treatment and medication.[2]  *See* WIS. STAT. §§ 51.20(1), (10), (13), 51.61(1)(g).  At the hearing, counsel for P.P. informed the court that P.P. was "in agreement for the Court to order the commitment," but was

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  I refer to orders for involuntary commitment under WIS. STAT. § 51.20 as "commitment orders" and to orders for involuntary medication or treatment under WIS. STAT. § 51.61(1)(g) as "medication orders."

2

taking the further position that the commitment should be "on an outpatient basis without a medication order."

¶3      The County called a psychiatrist to testify regarding the appropriate level of care for P.P. and the potential need for a medication order. Without objection by P.P., the circuit court admitted a written report of the psychiatrist offered by the County. After hearing argument from the parties, the circuit court issued a commitment order and a medication order. Each order was to last six months, or until October 2020.

¶4      In September 2020, a hearing was held on the County's petition to extend both P.P.'s commitment and medication orders. At this hearing, P.P., through counsel, stipulated to twelve-month extensions of both orders.[3]

¶5      P.P. appeals, challenging only the April 2020 medication order.

## DISCUSSION

¶6      P.P.'s sole basis for challenging the April 2020 medication order is that it was based on insufficient evidence. As to potential mootness, he argues that the issue raised in this appeal is not moot, despite expiration of the challenged order. This is so, he argues, because the expired order has collateral consequences

---

[3] P.P. argues in his reply brief on appeal that the County "rel[ies] in large part upon documents and evidence not in the record," citing the respondent's appendix filed by the County with its brief. As best I can discern, the focus of P.P.'s concern is evidence in the County's appendix on appeal relating to a stipulation between the parties in 2021, which the County briefly notes in its statement of facts. The County should have moved to supplement the record with this evidence before referencing it on appeal and I disregard the non-record evidence. However, this does not affect the outcome here. The events described in the Background section of this opinion, which are based on record evidence, are sufficient to support the County's argument on mootness and I reject as undeveloped any argument that P.P. may intend to make regarding the adequacy of the record.

for him that could be practically affected by reversal. In the alternative, P.P. argues that I should disregard mootness based on multiple exceptions to the general mootness rule. The County argues that this issue in this appeal is moot, based largely on P.P. stipulating to a new medication order in September 2020, and that no mootness exceptions apply. I agree with the County that the issue raised is moot and that no exception applies.

¶7        "Mootness is a doctrine of judicial restraint." *Marathon County v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901. "'An issue is moot when its resolution will have no practical effect on the underlying controversy.'" *Id.* (quoted source omitted). "Because moot issues do not affect a live controversy," appellate courts generally decline to reach them. *See id.* This court may overlook mootness when one of several exceptions applies, as addressed below. *See id.* Whether the issue raised in this appeal is moot and whether an exception applies are questions of law that I determine independently. *See id.*; *Waukesha County v. S.L.L.*, 2019 WI 66, ¶10, 387 Wis. 2d 333, 929 N.W.2d 140.

*Collateral Consequences*

¶8        P.P. argues the issue he raises on appeal is not moot based on the concept of collateral consequences as it is discussed in case law regarding the mootness of involuntary commitment orders. I summarize this law before describing P.P.'s argument in more detail.

¶9        Our supreme court has stated that a challenge to a commitment order is not moot if the subject of the order would experience negative collateral consequences from the existence of the order. *See D.K.*, 390 Wis. 2d 50, ¶¶23-25. The specific collateral consequence referred to in *D.K.* was a ban on D.K. possessing firearms. The firearms ban resulting from the commitment order lasted

beyond the expiration of the commitment order. *See id.*, ¶25. The court noted that, in the absence of the firearms ban, D.K. would otherwise have a constitutional right to bear arms, which is "no minor consequence." *See id.* The court stated that a decision in that case could have a "practical effect" because a reversal of the order would "void the firearms ban." *See id.* Because the firearms ban on its own was a collateral consequence that prevented mootness from arising, the court did not address whether other potential consequences for the subject of a commitment order that can last beyond the order's expiration—specifically the payment of costs of care under WIS. STAT. § 46.10(2)-(3) or "negative stigma"— could also avoid application of the mootness doctrine. *See D.K.*, 390 Wis. 2d 50, ¶25 n.7.

¶10     As both parties note, our supreme court in *D.K.* drew on the logic of case law discussing mootness in the context of challenges to criminal convictions when the sentences were fully served before the appeals processes were resolved. *See D.K.*, 390 Wis. 2d 50, ¶¶23-24. The court noted that, in its earlier decision *State v. Theoharopoulos*, 72 Wis. 2d 327, 240 N.W.2d 635 (1976), the court had concluded that a challenge to a conviction with a completed sentence was not moot because "'on the face of the record, there [was] a causal relationship between the defendant's present confinement [due to a later conviction] and the prior conviction which he wishes to attack.'" *D.K.*, 390 Wis. 2d 50, ¶23 (quoting *Theoharopoulos*, 72 Wis. 2d at 333) (first alteration in *D.K.*). The court in *D.K.* went on to state that, although *D.K.* dealt with a chapter 51 commitment order and not a criminal matter, "the logic of *Theoharopoulos*, is just as sound here," because in *D.K.* there was a "'causal relationship between'" the firearms ban and the expired civil commitment. *See D.K.*, 390 Wis. 2d 50, ¶24 (quoted source omitted). And, as P.P. emphasizes, *D.K.* also quotes U.S. Supreme Court

precedent stating that an issue in a "criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *See Sibron v. New York*, 392 U.S. 40, 57 (1968); *D.K.*, 390 Wis. 2d 50, ¶23.

¶11 Against this background, P.P. argues that his sufficiency challenge is not moot based on the collateral consequence of negative stigma for him arising from the April 2020 medication order. *See Addington v. Texas*, 441 U.S. 418, 425-26 (1979) (noting that "stigma" is one label for the "adverse social consequences" to committed individuals that can be caused by the "finding of probable dangerousness to self or others" involved in a commitment).[4]

---

[4] To illustrate the breadth of what P.P. means in invoking the concept of stigma, he further cites to the following discussion from non-binding federal law:

> In addition to the statutory disabilities associated with an adjudication of mental illness, and just as serious, are the difficulties that the committed individual will face in attempting to adjust to life outside the institution following release.… Evidence is plentiful that a former mental patient will encounter serious obstacles in attempting to find a job, sign a lease or buy a house.

*Lessard v. Schmidt*, 349 F. Supp. 1078, 1089 (E.D. Wis. 1972), *vacated on other grounds*, 414 U.S. 473 (1974).

Separately, I reject each of the following as additional purported collateral consequences identified by P.P. because he fails to explain how reversal of the April 2020 medication order would have a practical effect on any of these alleged risks. P.P. generally alleges that medication orders themselves can lead to (1) harmful side effects, some permanent, due to the taking of psychotropic medication, (2) long-lasting psychological trauma that may arise from the forced administration of the drugs by injection if the committed person refuses to take them, and (3) harmful and potentially long-lasting effects of withdrawal from the drugs if the committed person exercises his or her right to cease taking them after all pertinent orders expire. P.P. leaves an unexplained disconnect between these alleged dangers and the concept of collateral consequences pertinent to mootness analysis.

¶12 In support of this argument, P.P. urges this court to extend the reasoning of **D.K.** in several ways. First, P.P. argues that I should treat the mootness-related discussion in **D.K.** in the context of *commitment orders* as analogously applicable to *medication orders*. Second, P.P. contends that the question of whether stigma should count as a collateral consequence preventing mootness, left open in **D.K.**, should be resolved against mootness. Indeed, P.P. contends that an appeal challenging a medication order should *never* be deemed moot based on the fundamental liberty interests at stake, or at least not unless the petitioner shows "that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged [medication order]." *See Sibron*, 392 U.S. at 57.

¶13 I assume without deciding, in P.P.'s favor, that the stigma that potentially arises from the existence of a medication order is a collateral consequence that could, at least under some circumstances, render an otherwise moot issue not moot for purposes of challenging the order on appeal.[5] Further, I assume without deciding that P.P. need not provide affirmative evidence that he does, or likely will, face some amount of stigma from the April 2020 order, and that it is the County's burden to show that the April 2020 order creates no risk of stigma. *But see Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998) (concluding that in *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court "appear[ed] to have confined [*Sibron* and its presumption of collateral consequences] to criminal convictions"). I also assume that whatever stigma

---

[5] As part of this assumption and other assumptions I make in P.P.'s favor, I set to the side the fact that, under WIS. STAT. ch. 51, there are at least some measures taken to maintain the confidentiality in proceedings relating to potential commitment and medication orders.

7

could be caused by a medication order can be remedied by reversing the order. Having made these assumptions, I conclude that the County shows that resolving P.P.'s sufficiency challenge to the April 2020 medication order would not practically affect mental-health-related stigma faced by P.P. As I now explain, this is due to the presence of other orders that limit his liberties based on findings regarding his mental health—orders which, so far as the record shows, P.P. has never challenged, so that there is no prospect that these other orders will at some point also be reversed.

¶14 Explaining further, I agree with the County that reversing the April 2020 medication order would not have a practical effect on the assumed stigma associated with his having been involuntarily medicated under that order, given the existence of the other commitment and medication orders noted above that P.P. did not successfully contest. Those other commitment and medication orders stand as valid orders representing findings that P.P. was, at pertinent times, deemed by a court to be dangerous to himself or others and to have a mental illness. *See* WIS. STAT. §§ 51.20(1)(a)1.-2., 51.61(1)(g). As I understand P.P.'s argument, these are the kinds of findings that "engender" the "adverse social consequences" that can fit under the broad label of "stigma." *See Addington*, 441 U.S. at 425-26. The problem for P.P. is that these findings persist in a broad sense whether or not the April 2020 order is invalidated. Put in terms of the discussion in *D.K.* and as suggested by the County, the existence of the unchallenged commitment and medication orders breaks the causal link between the challenged April 2020 medication order and assumed stigma based on that specific order faced by P.P.

¶15 P.P. contends in reply that, under the standard laid out in *Sibron*, as cited in *D.K.*, "it does not matter how many convictions or commitments or

8

involuntary medication orders a person has on his record—the court of appeals cannot say he has no interest in appealing" those results. P.P. does not explain how applying any principle from those cases supports this broad statement, at least as applied to the collateral consequence of stigma that he purports to identify. At a minimum, P.P. seems to confuse the "collateral *legal* consequences" caused by a challenged conviction or medication order with the concept of *social* stigma resulting from a conviction or a medication order. *See Sibron*, 392 U.S. at 55-58 (emphasis added); *Addington*, 441 U.S. at 425. In any event, P.P. does not come to grips with the problem of causality noted by the County and does not meaningfully address how the other pertinent WIS. STAT. ch. 51 orders to which he has been subject undermine his contention that he faces stigma as a specific collateral consequence of the April 2020 order.[6]

---

[6] I reject P.P.'s request, made for the first time in his reply brief, that I should withhold decision in this appeal pending our supreme court's resolution of *Sauk County v. S.A.M.*, appeal No. 2019AP1033. P.P.'s only support for this request is to broadly assert that the appeal before the supreme court will address "the issue of mootness in Chapter 51 appeals." The supreme court describes the pertinent issue on appeal in *S.A.M.* as follows: "Whether respondent's appeal of his *recommitment* was moot because the commitment expired before respondent filed his notice of appeal." CLERK OF SUPREME COURT, *Wisconsin Supreme Court Pending Cases* (last visited December 7, 2021), https://www.wicourts.gov/supreme/sc_tabpend.jsp (emphasis added). There are significant differences between the posture of this case and the posture of *S.A.M.* P.P. fails to persuade me that, given the particulars of this case as discussed in this opinion, any statement that is likely to be contained in the supreme court's decision in *S.A.M.* could affect the result here.

P.P. may intend to suggest that our supreme court in *S.A.M.* may decide to adopt the approach of the Alaska courts. Under this law, in P.P.'s words, "appeals of civil commitments will always satisfy the public interest exception to the mootness doctrine." *See Matter of Naomi B.*, 435 P.3d 918, 924 (Alaska 2019). P.P. contends that if this approach were adopted, by analogy, in Wisconsin courts no challenge to chapter 51 *medication orders* could be deemed moot, or in the alternative such challenges would always be subject to a mootness exception. However, given the nature of Wisconsin case law to date, I see no reason to suspect that our supreme court would diverge so far from its traditional approach to adopt a categorical exception to mootness that would shield from the mootness bar all challenges to chapter 51 medication orders, including under the circumstances presented here. *See Waukesha County v. S.L.L.*, 2019 WI 66, ¶41, 387 Wis. 2d 333, 929 N.W.2d 140 (declining to address sufficiency challenge to involuntary commitment due to mootness).

*Mootness Exceptions*

¶16    A court reviewing an expired medication order may address moot issues under certain circumstances. *See Outagamie County v. Melanie L.*, 2013 WI 67, ¶¶79-80, 349 Wis. 2d 148, 833 N.W.2d 607.  Specifically, this court "may overlook mootness if the issue falls within one of five exceptions:"

> (1) the issue is of great public importance; (2) the issue involves the constitutionality of a statute; (3) the issue arises often and a decision from this court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely of repetition and evades review.

*See D.K.*, 390 Wis. 2d 50, ¶19.  I understand P.P. to argue that the issue raised on appeal should be addressed, even if it is moot, based on all of these exceptions but the second, which involves challenges to the constitutionality of the statute.[7]

¶17    As to public importance, P.P. points to the indisputably significant liberty interests at stake for persons who are potentially subject to medication orders under WIS. STAT. ch. 51.  *See Melanie L.*, 349 Wis. 2d 148, ¶43 ("Competent individuals also retain a 'significant liberty interest in avoiding forced medication of psychotropic drugs.'" (quoting Wisconsin case that in turn cites *Washington v. Harper*, 494 U.S. 210, 221 (1990))); *Lenz v. L.E. Phillips Career Dev. Ctr.*, 167 Wis. 2d 53, 69, 482 N.W.2d 60 (1992) (WIS. CONST. art. I, § 1 protects "an individual's choice of whether or not to accept medical treatment").  However, as the County notes, P.P. does not explain how reaching

---

[7] In his initial brief, P.P. contends that "all the exceptions to mootness are sufficiently present in this case," but does not develop an argument that any provision of WIS. STAT. § 51.61(1)(g) is unconstitutional.  Further, in his reply brief, P.P. appears to clarify that he did not intend to argue that the statute's unconstitutionality is a basis to overlook mootness here.

the merits here could protect the individual rights of any person *other than himself*, based on the narrow sufficiency issue raised in this appeal, and therefore he does not complete this *public* importance argument. *See* **Langlade County v. D.J.W.**, 2020 WI 41, ¶26 n.5, 391 Wis. 2d 231, 942 N.W.2d 277 (noting that the opinion would provide guidance on the "question of the necessary evidence to support an involuntary commitment"); **Melanie L.**, 349 Wis. 2d 148, ¶80 & n.23, ¶82 (noting that moot issue involved statutory interpretation that once resolved helped "clarify the law"). P.P. does not reply to this argument and I deem the point conceded. *See* **State v. Dieter**, 2020 WI App 49, ¶10 n.3, 393 Wis. 2d 796, 948 N.W.2d 431 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

¶18    Similarly, P.P. does not make developed arguments in support of applying the third and fourth mootness exceptions—oft-arising or recurring issues for which a decision of this court would be essential or avoid uncertainty. He does not explain what essential guidance for future cases or what uncertainty would be avoided based on a resolution of the sufficiency argument that he now raises.

¶19    P.P. makes the following points, which most clearly correspond to the fifth mootness exception. This involves the issue of whether topics raised are likely to repeat and evade review. To summarize, he observes that the statutory length of initial commitment and medication orders, combined with "not uncommon" delays in litigation (*e.g.*, time for appointing defense counsel and obtaining hearing transcripts), lead to the likelihood that issues in WIS. STAT.

ch. 51 cases evade review.[8]   Accepting this as true, P.P.'s argument on the fifth exception nonetheless fails to persuade me to overlook mootness of the issue in this appeal because he does not establish that the issue is likely to be repeated.  To be sure, there will be future sufficiency challenges to medication orders.  But there will not necessarily be any that are similar enough to this one for an analysis on the merits here to stand for any proposition that is useful going forward.  As the County notes, "[c]hallenges to the sufficiency of evidence are necessarily fact-bound inquiries that will vary from case to case."  *See S.L.L.*, 387 Wis. 2d 333, ¶41.  P.P. does not explain how any of the particular circumstances involved in his sufficiency challenge are likely to be repeated.

¶20   Stepping back, the "fact-bound" nature of sufficiency challenges undermines all of P.P.'s mootness exception arguments.  Another way to describe the incompleteness of P.P.'s arguments is that he does not address how resolving the sufficiency challenge he presents would call for anything other than applying well-established sufficiency standards to the particular facts of this case, in contrast to an appeal in which the court might be expected to clarify how those standards should be applied across some category of cases.  *See id.* ("a definitive decision in this case would provide no guidance to circuit courts, nor would it preclude uncertainty in evaluation of evidentiary sufficiency in other cases").

---

[8] The County appears to contest how readily appeals of commitment and medication orders evade review in the manner described by P.P.  But I agree with P.P. that the County's arguments on this topic are not fully developed.  I assume without deciding that P.P. is correct that, in general, appeals of WIS. STAT. ch. 51 orders "will, more likely than not, evade review." *See Outagamie County v. Melanie L.*, 2013 WI 67, ¶80, 349 Wis. 2d 148, 833 N.W.2d 607 (issue regarding involuntary medication or treatment statute "likely to evade appellate review in many instances because the order appealed from will have expired before an appeal is completed").

**CONCLUSION**

¶21 For all of these reasons, I conclude that the only issue raised in this appeal is moot and that no exception to the doctrine of mootness applies. I affirm the order of the circuit court on that ground.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.