COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP533**

STATE OF WISCONSIN

Cir. Ct. No. 2020ME243

IN COURT OF APPEALS
DISTRICT II

---

IN THE MATTER OF THE MENTAL COMMITMENT OF M.A.C.:

WAUKESHA COUNTY,

    PETITIONER-RESPONDENT,

  V.

M.A.C.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Waukesha County: LAURA F. LAU, Judge. *Affirmed*.

¶1      GROGAN, J.[1] M.A.C. appeals from Chapter 51 recommitment orders entered August 16, 2022.[2] M.A.C. makes three arguments: (1) service of the notice of the recommitment hearing on her attorney instead of on her personally violates the Fourteenth Amendment and WIS. STAT. § 51.20(10)(a); (2) the circuit court erroneously exercised its discretion when it entered a default judgment against her even though her attorney appeared at the recommitment hearing; and (3) the evidence presented at the recommitment hearing was insufficient to support either order. This court affirms.

## I. BACKGROUND

¶2      M.A.C. was initially committed in June 2020 and was recommitted several times. She is diagnosed with schizoaffective disorder, which is treated with a monthly injectable dose of Abilify Maintena as well as two oral medications. During her initial commitment, M.A.C. was released to outpatient commitment under a conditional order. If she did not appear for her scheduled medication appointments, a statutory "DM" order[3] was used to authorize the sheriff to bring her in for her monthly injection. M.A.C. repeatedly expressed that she did not have a mental illness and did not need medication. At some point,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] There are two commitment orders that were entered on the same date—one for the recommitment and one for the administration of medication.

[3] A "DM" order is a reference to an order the Department of Health and Human Services issues when an individual under a court order to receive medication injections has missed an appointment. The order authorizes the sheriff to locate, pick up, and transport the individual to the Department for the medication injection.

M.A.C. was evicted from her apartment, and at the time the current recommitment petition was filed, M.A.C. was homeless.

¶3 On July 19, 2022, Danielle Weber, a social worker with the WIS. STAT. § 51.42 board[4] who manages M.A.C.'s case, filed a petition requesting an extension of M.A.C.'s commitment. The petition requested a recommitment hearing, asserting that M.A.C.'s recommitment is needed to protect society, M.A.C., or both and that M.A.C. is "dangerous because there is a substantial likelihood … that [M.A.C.] would be a proper subject for commitment if [her current] treatment is withdrawn."

¶4 The circuit court set the recommitment hearing for August 16, 2022. The notice of hearing listed M.A.C. as homeless but nonetheless said the notice was mailed to M.A.C., although no mailing address was listed. This notice directed M.A.C. to contact the court-appointed doctors for examination before the recommitment hearing. The court appointed Dr. Cary Kohlenberg and Dr. Peder Piering and provided their phone numbers in the notice. The County sent a separate notice of the recommitment hearing to the State Public Defender and to M.A.C.'s case manager, Weber. It is undisputed that M.A.C. was not personally served with the notice of the recommitment hearing, but her appointed public defender did receive the notice.

---

[4] Under ch. 51, county governments are given "primary responsibility for the well-being, treatment and care of the mentally ill[.]" WIS. STAT. § 51.42(1)(b). They are required to establish a community mental health program to be administered by what has become known as a "51.42 board." This board provides comprehensive diagnostic and evaluative services, inpatient and outpatient care and treatment, residential facilities, partial hospitalization, emergency care, and supportive transitional services to those suffering from mental disabilities. *See* § 51.42.

¶5      M.A.C. did not contact either court-appointed doctor.  Both doctors filed reports with the circuit court opining that M.A.C. met the statutory criteria and should be recommitted.  Dr. Kohlenberg's report indicated that he based his opinion on prior examinations of M.A.C., her treatment records, and his contact with Weber.  Dr. Kohlenberg recommended outpatient treatment.  Dr. Piering did not specifically identify the bases for his opinion, but he did refer to past examinations of M.A.C. and her treatment record.  Dr. Piering recommended inpatient treatment.

¶6      The circuit court held the recommitment hearing on August 16, 2022.  M.A.C. did not attend.  However, M.A.C.'s lawyer did attend and told the court that she had "no explanation for [M.A.C.'s] nonappearance" and that she "ha[d] been trying to reach" M.A.C.  The lawyer also told the court that Weber "ha[d] been trying … hard to find" M.A.C.

¶7      The County then advised the circuit court that it could order M.A.C. into custody, but the best option would be to find M.A.C. in default "because the 51[.]42 Board knows that [M.A.C.] is present in Waukesha County, and the 51[.]42 Board has been able to provide services including her outpatient injection[.]"  The County advised that, though a default would result in M.A.C. "giving up the rights that she has," our supreme court recently held in *S.L.L.*[5] that service of the notice on a recommittee's lawyer satisfied statutorily-mandated notice requirements.  Thus, the County asserted that M.A.C. was "properly noticed," and the court could find her in default.  The County then asked the court

---

[5] *Waukesha County v. S.L.L.*, 2019 WI 66, 387 Wis. 2d 333, 929 N.W.2d 140.

to "rely upon the doctor[s'] reports to find the requisite requirements to continue commitment."

¶8     When the circuit court asked M.A.C.'s lawyer for her position, the lawyer advised that she had "no direction from [M.A.C.] as to how she's wishing to proceed on this."  She agreed that M.A.C. "would [not] want to be taken into custody."  She also pointed out that M.A.C. had "cooperated with getting her shot" but said she did not "know her position at this time."

¶9     The County said that "if the Court does find [M.A.C.] in default," it "would really do as [it does] in a no contest posture and ask the Court to rely upon the reports."  The circuit court found M.A.C. in default.  The County then asked the court to rely on "the doctors' reports" that had been filed and for the court to find that "[M.A.C.] is mentally ill, that she is dangerous based on a substantial probability of physical impairment or physical injury to self [and] others as manifested or shown by a substantial likelihood based on treatment record[s] that she would be a proper subject for commitment if treatment were withdrawn" and asked the court to order a recommitment outpatient treatment for twelve months. The County also asked "for a medications order, that [M.A.C.] is substantially incapable of applying the advantages, disadvantages, and alternatives of her condition in order to make an informed choice about medications and treatment" and for a DM order.

¶10     When the circuit court asked M.A.C.'s lawyer for her position, she responded:  "I'm not in a position to object."  The court then found that based on "the doctors' reports and [M.A.C.'s] failure to appear today … there are grounds for extension of the commitment" and that M.A.C. met the statutory criteria for an outpatient recommitment order based on WIS. STAT. § 51.20(1)(am), linked to the

third dangerousness standard, § 51.20(1)(a)2.c. The court ordered M.A.C. recommitted for twelve months. It also found that she needs medication as medication "will have therapeutic value" and that "[t]he advantages, disadvantages, and alternatives to medication have been explained to her" but that her mental illness renders her incompetent to refuse the medication because she is "incapable of applying an understanding" of the information and cannot "make an informed choice[.]" The court entered the involuntary medication order. M.A.C. appeals from both the underlying recommitment order and the involuntary medication order.

## II. DISCUSSION

### A. Standard of Review

¶11 *Waukesha County v. S.L.L.*, 2019 WI 66, ¶10, 387 Wis. 2d 333, 929 N.W.2d 140 sets forth the standards of review applicable here. "Due process determinations are questions of law we decide de novo." *Id.* (citation omitted). "Whether Chapter 51 allows for entry of default against a respondent for failing to appear at a final recommitment hearing is also a question of law we review de novo." *Id.* "We review a circuit court's decision on whether default judgment is warranted for an erroneous exercise of discretion because 'the decision to grant a motion for default judgment is within the sound discretion of the circuit court.'" *Id.* (citation omitted).

### B. Personal Service of Notice to M.A.C. and Due Process

¶12 M.A.C. first asks this court to reverse the ch. 51 orders because the County failed to give her personal notice of the recommitment hearing and instead sent the notice to her appointed lawyer. She alleges this violates WIS. STAT.

§ 51.20(10)(a)'s text, which says: "Within a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of [the] final hearing." In addition, relying on *Vitek v. Jones*, 445 U.S. 480 (1980), she contends this violates the Fourteenth Amendment's procedural due process protections.

¶13 This court is bound by *S.L.L.*, where substantially similar arguments were made and rejected by our supreme court. In *S.L.L.*, our supreme court determined that service of the recommitment hearing notice on the subject's lawyer complied with the statutes and that using indirect service methods did not violate due process when the subject was homeless and had failed to adhere to the required condition of keeping the County informed of her current address. *S.L.L.*, 387 Wis. 2d 333, ¶¶26-30 & n.18. These same conclusions apply to M.A.C. First, service of the notice on her appointed attorney satisfies the statutes. Second, M.A.C., like S.L.L., failed to keep the County informed of her current address, making it difficult if not impossible for the County to personally serve her the notice.

¶14 M.A.C. contends that this court does not need to follow *S.L.L.* because *S.L.L.* did not address *Vitek*. This court is not persuaded. *S.L.L.* rejected a claimed due process violation based on facts similar to those in this appeal. This court cannot ignore binding precedent. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). *Vitek* is not a new case that postdates the *S.L.L.* decision. Rather, *Vitek* is a 1980 case that existed long before our supreme court decided *S.L.L.*; therefore, *Vitek* does not offer this court a way to disregard *S.L.L.* Further, even without the *S.L.L.* precedent, *Vitek* is distinguishable. *Vitek* involved "whether the Due Process Clause of the Fourteenth Amendment entitles a prisoner convicted and incarcerated in … Nebraska to certain procedural

7

protections, including notice, an adversary hearing, and provision of counsel, before he is transferred involuntarily to a state mental hospital for treatment of a mental disease or defect." *Vitek*, 445 U.S. at 482-83. The facts in *Vitek* are substantially different than those presented in this appeal. M.A.C. is not an incarcerated prisoner being transferred to a mental health facility due to a prison's inability to provide treatment. And, M.A.C.'s case does not involve the Nebraska statutes at issue in *Vitek*. This court is bound by *S.L.L.*

### C. Default Judgment

¶15 M.A.C. next objects to the default judgment entered against her, asserting that the presence of her lawyer at the hearing should have precluded the default. Again, *S.L.L.* controls because our supreme court rejected a similar challenge in that case. The *S.L.L.* court affirmed a circuit court's grant of default judgment in a ch. 51 recommitment case when only S.L.L.'s lawyer appeared at the recommitment hearing—and when S.L.L., who was homeless, had not received notice of the hearing. *S.L.L.*, 387 Wis. 2d 333, ¶¶6-7, 30. The *S.L.L.* court concluded: "The fact that she did not personally know about the hearing is … an inadequate response because her own actions made it impossible for her to learn of it. A respondent may not insulate her rights against forfeiture by failing to comply with the obligations to which she agreed." *Id.*, ¶34.

¶16 Although M.A.C. presents the issue a bit differently because she claims that the presence of her lawyer on her behalf precludes granting default judgment against her, this does not eliminate the controlling determination in *S.L.L.* As set forth above, although M.A.C.'s lawyer "appeared" in the sense that she attended the hearing (just as S.L.L.'s lawyer had), M.A.C.'s lawyer told the circuit court that she had not spoken with M.A.C., she had not been able to locate

M.A.C., she could not inform the court as to M.A.C.'s position on the recommitment, and she had "no direction from [M.A.C.] as to how she[] wish[ed] to proceed on this." This is the same factual scenario present in *S.L.L.*, where our supreme court approved a default judgment. Accordingly, under these circumstances, this court cannot say that M.A.C.'s lawyer's presence at the hearing prohibited the circuit court from granting default judgment. M.A.C. failed to appear, and her lawyer, who did appear, did not have any information upon which she could have explained M.A.C.'s absence or provided the court sufficient information on M.A.C.'s behalf to prevent default judgment. Under these circumstances, this court cannot say the circuit court erroneously exercised its discretion.[6]

### D. Sufficiency of the Evidence

¶17     M.A.C.'s last claim is that the evidence was insufficient to support a finding of dangerousness with respect to the commitment order and insufficient to show she was given a timely and reasonable explanation with respect to the medications in the medication order. She also contends that the circuit court could not rely on the doctors' reports because they were not formally entered into evidence.

¶18     The evidence in the appellate Record, which includes both doctors' reports, is sufficient to support a finding that M.A.C. is dangerous. Because this is

---

[6] The circuit court's statement that M.A.C. "appeared today by counsel" does not change the analysis. Likewise, the standard form that gives the court the option of only marking if the "subject appeared" either "in person," "by video," or "by counsel" does not, under these circumstances, make counsel's presence in court an appearance sufficient to preclude the default judgment entered.

a recommitment rather than an initial commitment, dangerousness may be established under WIS. STAT. § 51.20(1)(am), which recognizes that a person who has been treated and medicated under the initial order "may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior[.]" *Langlade County v. D.J.W.*, 2020 WI 41, ¶33, 391 Wis. 2d 231, 942 N.W.2d 277 (citation omitted). Reliance on § 51.20(1)(am) shows that the person is still dangerous because if treatment is withdrawn, one of the five criteria in § 51.20(1)(a)2 would recur. Thus, a circuit court, in extending a commitment in reliance on subsection (am), must link that determination to one of the five dangerousness criteria in § 51.20(1)(a)2. *D.J.W.*, 391 Wis. 2d 231, ¶¶3, 32-34.

¶19 This is exactly what the circuit court did here. The court found M.A.C. dangerous under WIS. STAT. § 51.20(1)(am), with a link to the standard in § 51.20(1)(a)2.c., which indicates that due to M.A.C.'s impaired judgment, there is a substantial probability that M.A.C. would physically injure herself or others. This finding is supported by Dr. Piering's reports. Dr. Kohlenberg agreed that M.A.C. was dangerous under subsection (am) but linked his opinion to the dangerousness standard in § 51.20(1)(a)2.a., which involves physical harm to self.[7]

¶20 M.A.C. faults the circuit court's finding of dangerousness for being too general. Though this court agrees that circuit courts need to take care to make specific findings, this court cannot conclude reversal is warranted under the

---

[7] Dr. Kohlenberg also linked his WIS. STAT. § 51.20(1)(am) dangerousness finding to § 51.20(1)(a)2.e.

circumstances specific to this case. M.A.C.'s lawyer did not challenge *any* of the County's proof at the recommitment hearing—either as to dangerousness or proper communication on the medications.[8] There was no objection to the County's request that the circuit court rely on the doctors' reports or to the County's suggestion that the circuit court treat this as if it was a "no contest" ch. 51 recommitment. There was no indication from M.A.C. or her lawyer that M.A.C. was even challenging the recommitment or corresponding medication order.

¶21 Had M.A.C.'s lawyer made these arguments in the circuit court, the County and the circuit court would have had the opportunity to address and

---

[8] M.A.C. contends that forfeiture cannot apply to the medications order. In support, she relies on a nonprecedential one-judge decision, *Waukesha County v. M.J.S.*, No. 2017AP1843, unpublished slip op. (WI App Aug. 1, 2018). *M.J.S.* is not controlling or persuasive and, in any event, is distinguishable. In *M.J.S.*, the recommitment subject had not been provided with the requisite medications explanation in approximately eight years. *Id.*, ¶22. Plus, M.J.S. was present at the recommitment hearing and contested commitment. *Id.*, ¶8. *M.J.S.* was not a case like *S.L.L.*, nor did it involve the recommitment subject's lawyer taking no position and making no objection at the recommitment hearing. Moreover, the *M.J.S.* opinion does not cite to any authority indicating that a recommitment subject cannot forfeit a challenge to the medications order. *M.J.S.*, ¶27. In fact, it appears the *M.J.S.* court reached that determination sua sponte, explaining: "While briefing on this matter would have been helpful, this court is inclined to conclude that this statutory right may not be forfeited—only waived." *Id.* Finally, even *M.J.S.* limited its "cannot be forfeited" conclusion to cases where the subject actually contests the recommitment. *See id.*, ¶20 ("*where the patient invokes* his or her personal right to refuse treatment" (emphasis added)).

Here, M.A.C.'s appointed lawyer did not object, did not contest, and took no position on the recommitment petition or the request for the medications order. This led the County and the circuit court to believe M.A.C. was not contesting the recommitment or the medications order. M.A.C. failed to provide her address, telephone number, or any other method to contact her. She did not contest the recommitment in the circuit court. Had she done so, it appears this case would be more like *Walworth County v. C.A.E.*, No. 2020AP834-FT, unpublished slip op. ¶17 (WI App Sept. 16, 2020), where this court upheld the involuntary medication order when a doctor testified that C.A.E. had the advantages, disadvantages, and alternatives of the medication explained to her "over the years[.]" The prior attempted medication conversations with M.A.C. were much closer in time to M.A.C.'s recommitment hearing than those in *M.J.S.*

11

resolve them during that hearing. Because these objections were not made in the circuit court, both the County and the circuit court operated as if M.A.C. was not contesting that she was dangerous, that she could not understand the advantages/disadvantages of the medications, and that the circuit court could rely on the filed doctors' reports.

¶22 Accordingly, M.A.C. has forfeited her right to raise these challenges on appeal. *See* ***State v. Holland Plastics Co.***, 111 Wis. 2d 497, 504, 331 N.W.2d 320 (1983) ("Generally, issues not raised or considered by the trial court will not be considered for the first time on appeal."); ***Schonscheck v. Paccar, Inc.***, 2003 WI App 79, ¶¶10-11, 261 Wis. 2d 769, 661 N.W.2d 476 (same). Forfeiture is not a mere rule of convenience—it is essential to the orderly administration of justice. The rule promotes efficiency and justice by giving the parties and the circuit court notice and allowing the court to correct or avoid the alleged error. It also avoids "sandbagging" by a party failing to object and later claiming error. *See, e.g.*, ***State v. Counihan***, 2020 WI 12, ¶¶26-27, 390 Wis. 2d 172, 938 N.W.2d 530.

¶23 Reversal in this appeal on issues that were uncontested in the circuit court would be the quintessential example of sandbagging. Had M.A.C.'s lawyer asserted a contest posture,[9] the County could have called the doctors and the case manager—who were either present or available at the recommitment hearing—to

---

[9] To the extent M.A.C. contends her counsel could not assert a contest posture because she did not know whether M.A.C. wanted to contest the recommitment, this does not change the analysis. This court still has no basis to reverse the commitment orders under the circumstances presented here. Moreover, exercising caution due to the lack of contact with M.A.C., her counsel could have demanded that the County be put to its proof, which would have resulted in a full hearing.

testify.[10]  The reports could have been formally introduced into evidence.  The witnesses could have been asked about the dangerousness standards they relied upon in preparing their reports, and they could have testified about the repeated instances in the past in which they had explained or attempted to explain the advantages, disadvantages, and alternatives to the recommended medications.  Although this court agrees with M.A.C.'s appellate counsel that ch. 51 cases involve significant liberty interests, a subject of a recommitment who fails to fight for his or her liberty rights in the circuit court cannot expect reversal in the appellate court.[11]

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[10] The County could have called the doctors and the case manager to testify despite M.A.C.'s failure to contest or object.  Doing so may have even avoided an appeal.  M.A.C. argues that it was not her job to make sure the County did its job.  That is true.  But our legal system requires objections in the circuit court in order to preserve them for appellate review.  Failure to object means the error is not preserved.  *See State v. Counihan*, 2020 WI 12, ¶¶25-26, 390 Wis. 2d 172, 938 N.W.2d 530.

[11] In her brief, M.A.C. asked this court to, on its own motion, convert this from a one-judge appeal to a three-judge appeal to allow for publication of the decision.  *See* WIS. STAT. RULE 809.23(1)(a)1.  Because this case is decided based on existing precedent and forfeiture, this court declines M.A.C.'s invitation.